# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
May 2, 2011

No. 09-20406

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

OSCAR DANILO GARCIA-RODRIGUEZ, also known as Oscar Daniello Mendoza, also known as Roverto Ponse, also known as Carlos Rodriguez, also known as Roberto Perdomo-Ponce, also known as Roberto Perdomo Ponce, also known as Oscar Danilo Rodriguez-Gien, also known as Oscar Danilo Garcia,

Defendant - Appellant

Consolidated with
No. 09-40635

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

OSCAR DANILO GARCIA-RODRIGUEZ,

Defendant-Appellant

Nos. 09-20406 & 09-40635

---

Appeals from the United States District Court
for the Southern District of Texas

---

Before SMITH, DeMOSS, and OWEN, Circuit Judges.

PER CURIAM:

The sole issue on appeal is whether the district court had jurisdiction to revoke Oscar Danilo Garcia-Rodriguez's three-year term of supervised release in Case No. 09-40635.[1]  Resolution of this issue depends on the date on which Garcia was "released from imprisonment" pursuant to 18 U.S.C. § 3624(e).  We hold that he was released from imprisonment the moment his administrative detention began, i.e., the moment he was transferred from Bureau of Prisons (BOP) custody to Immigration and Customs Enforcement (ICE) custody to await deportation.  However, because the record is not clear as to the exact date on which Garcia was released from imprisonment, we make a limited remand to the district court for further fact-finding in order to determine the exact date on which Garcia was released from imprisonment.

## I.  FACTS

On March 14, 2003, Garcia pleaded guilty to having been found in the United States after deportation following a felony conviction in violation of 8 U.S.C. § 1326(a) and (b)(1).  He was sentenced to a 37-month term of

---

[1] The federal public defender initially filed briefs in both Case No. 09-20406 and Case No. 09-40635 in accordance with *Anders v. California*, 386 U.S. 738 (1967), requesting leave to withdraw as counsel because neither case contained a nonfrivolous issue. This court filed an April 6, 2010 Order (Smith, J.), instructing the federal public defender to file a brief on the merits addressing (1) "a potential nonfrivolous issue regarding the district court's assessment of two criminal history points under U.S.S.G. § 4A1.1(d) on the ground that Garcia was under a valid sentence when he committed the instant offense" in Case No. 09-20406, and (2) "a potential nonfrivolous issue for appeal regarding the district court's jurisdiction to revoke supervised release" in Case No. 09-40635.  After further examination, the federal public defender argued that the only nonfrivolous issue in either case was issue (2) above.  We agree and therefore address only the jurisdictional issue in Case No. 09-40635.

2

imprisonment followed by a three-year term of supervised release. Upon completion of his prison sentence, apparently on some date between October 17, 2005, and October 28, 2005, he was transferred from BOP custody to ICE custody to await deportation. It appears that he was deported on October 28, 2005.[2]

Almost three years later, on October 11, 2008, Garcia was arrested in Houston for criminal trespass. On October 24, 2008, a probation officer filed a warrant petition alleging that Garcia had violated the conditions of his supervised release by committing (1) criminal trespass, (2) illegal re-entry, and (3) a violation of the special condition of release that he not return to the United States illegally. The probation officer recommended that Garcia's term of supervised release be revoked. A revocation warrant issued on October 24, 2008.

On April 28, 2009, Garcia filed a motion to dismiss the revocation warrant arguing that the district court did not have jurisdiction to hear the revocation case pursuant to 18 U.S.C. § 3583(i), because the revocation warrant issued after his term of supervised release had expired. He contended in his motion that, according to the staff at the Federal Detention Center in Houston, the BOP's SENTRY system (an inmate record-keeping system) shows that he was transferred from BOP custody to ICE custody on October 17, 2005, not on October 28, 2005, as alleged in the warrant petition. He asserted that October 17, 2005, was the date on which his three-year term of supervised release commenced and therefore that his term expired at midnight on October 16, 2008, approximately one week before the revocation warrant issued.

Garcia's counsel ultimately chose not pursue the motion to dismiss. Subsequently, at a hearing before the district court on June 11, 2009, Garcia

---

[2] The revocation petition stated that Garcia was deported on October 28, 2005, but the Presentence Investigation Report and the government's proffer stated that he was deported on November 17, 2005.

pleaded "true" to illegal re-entry and to violating the special condition that he not return to the United States illegally. The district court revoked his term of supervised release and sentenced him to an additional 18-month term of imprisonment. He timely appealed.

In response to the federal public defender's filing of briefs in accordance with *Anders v. California*, 386 U.S. 738 (1967), Garcia filed certain objections (Objections). His Objections again asserted that the district court lacked jurisdiction to revoke his term of supervised release. In support of his Objections he attached an email addressed to federal public defender Michael L. Herman, his trial counsel, from Beth Hull, a paralegal specialist employed by the BOP. The email dated March 26, 2009, reads in relevant part:

> SENTRY shows 10/17/2005 is the date I/M changed to ICE custody and he was INS removed 10/28/2005.

This court subsequently issued an April 6, 2010 Order instructing the federal public defender to file a brief on the merits addressing, *inter alia*, the jurisdictional issue in Case No. 09-40635 which we now consider.

## II. DISCUSSION

"We review the district court's jurisdiction to revoke a defendant's supervised release de novo." *United States v. Jackson*, 426 F.3d 301, 304 (5th Cir. 2005) (citing *United States v. Jimenez-Martinez*, 179 F.3d 980, 981 (5th Cir. 1999)). "A district court has jurisdiction to revoke a defendant's supervised release during the term of supervised release, or within a reasonable time after the term of supervised release has expired if a summons or warrant regarding a supervised release violation was issued prior to the expiration of the term of supervised release." *Id.* (citing 18 U.S.C. § 3583(i)). A "term of supervised release commences on the day the person is released from imprisonment . . . . A term of supervised release does not run during any period in which the person is imprisoned in connection with a conviction for a Federal, State, or local crime

unless the imprisonment is for a period of less than 30 consecutive days." 18 U.S.C. § 3624(e). The revocation warrant was issued on October 24, 2008, so only if Garcia was released from imprisonment prior to October 24, 2005, did his three-year term of supervised release expire before the revocation warrant issued.[3]

## A.    "Released From Imprisonment"

The government contends that even if Garcia was transferred from BOP custody to ICE custody on October 17, 2005, as Garcia asserts, such transfer did not cause his term of supervised release to commence. It argues that, under § 3624(e), Garcia was not "released from imprisonment" when he was transferred into ICE custody because administrative detention by ICE continued his confinement. It asserts that his term of supervised release only commenced on October 28, 2005, the date on which he was actually deported and, therefore, the date on which he was no longer confined by either the BOP or ICE. The government relies primarily on *United States v. Johnson*, 529 U.S. 53 (2000), and *United States v. Jackson*, 426 F.3d 301 (5th Cir. 2005), for the proposition that administrative detention qualifies as "imprisonment" for purposes of § 3624(e), but neither case is directly on point.

In *Johnson*, the Supreme Court found that, regardless of whether a defendant served more time in prison than he should have, the text of § 3624(e) controls and a term of supervised release commences only when the defendant "is released from imprisonment." 529 U.S. at 57. In its discussion the Court noted that "the ordinary, commonsense meaning of release is to be freed from

---

[3] Garcia states in his reply brief that even if his term of supervised release commenced on or after October 25, 2005, "it would still not be clear whether the district court had jurisdiction to consider the revocation petition, because there is no evidence that, as required, a warrant or summons also issued prior to the expiration of the term of supervised release." This is incorrect as a magistrate judge issue a revocation warrant pursuant to the warrant petition on October 24, 2008.

confinement." *Id.* Citing § 3624(e), it also stated that a defendant's "term of supervised release comes after imprisonment, once the prisoner is released by the Bureau of Prisons to the supervision of a probation officer. Supervised release does not run while an individual remains in the custody of the Bureau of Prisons." *Id.* (internal marks omitted). The Court did not answer whether other types of "confinement" qualify as "imprisonment" under § 3624(e).

In *Jackson*, this court determined that a defendant's term of supervised release was properly tolled during his imprisonment which was the result of a parole revocation that was later held to be unconstitutional. 426 F.3d at 305. It noted that § 3624(e) "indicates that the period of supervised release does not run during imprisonment; the statute states no exceptions." *Id.* at 304. It also did not answer whether other forms of confinement qualify as imprisonment.

Neither *Johnson* nor *Jackson* directly considered whether administrative detention by ICE qualifies as "imprisonment," such that a prisoner's transfer from BOP custody to ICE custody would not constitute being "released from imprisonment." 18 U.S.C. § 3624(e). And other non-precedential decisions cited by Garcia have indicated, but have not explicitly held, that administrative detention does not qualify as imprisonment. *See, e.g.*, *United States v. Perez*, 251 F. App'x 523, 524 (10th Cir. 2007) (unpublished) (noting that the defendant was released into ICE custody and detained for two years and that his "period of supervised release began to run as soon as he was transferred to ICE custody"). We have not found (and the parties do not cite) any circuit court authority directly on point. However, a straightforward reading of the applicable statute shows that administrative detention by ICE is not the same as imprisonment by the BOP.

Section 3624(a) of the statute provides that "[a] prisoner shall be released by the Bureau of Prisons on the date of the expiration of the prisoner's term of imprisonment, less any time credited toward the service of the prisoner's

sentence as provided in subsection (b)." 18 U.S.C. § 3624(a). The statute further provides:

> A prisoner whose sentence includes a term of supervised release after imprisonment shall be released by the Bureau of Prisons to the supervision of a probation officer who shall, during the term imposed, supervise the person released to the degree warranted by the conditions specified by the sentencing court. The term of supervised release commences on the day the person is released from imprisonment and runs concurrently with any Federal, State, or local term of probation or supervised release or parole for another offense to which the person is subject or becomes subject during the term of supervised release. A term of supervised release does not run during any period in which the person is imprisoned in connection with a conviction for a Federal, State, or local crime unless the imprisonment is for a period of less than 30 consecutive days.

*Id.* § 3624(e).

The statutory language of subsections (a) and (e) makes several things clear. First, imprisonment ends upon a prisoner's release from the custody of "the Bureau of Prisons." *See id.* § 3624(a), (e). Second, any other term of imprisonment must be "in connection with a [separate] conviction" for a "crime" if such imprisonment is to toll the term of supervised release. *Id.* § 3624(e). Third, the release shall be made "to the supervision of a probation officer." *Id.* And finally, only the specific terms "imprisonment" or "imprisoned" are used, not the term administrative detention or other specific types of custody. *Id.* § 3624(a), (e). In Garcia's case, he was released from BOP custody the moment he was transferred to ICE custody. He had no other term of imprisonment, based upon a separate conviction for a crime, which would have tolled his term of supervised release. Any supervision by a probation officer would have simply been "inactive" supervision while he was in ICE custody and then after he was deported. *See United States v. Brown*, 54 F.3d 234, 239 (5th Cir. 1995) (finding that supervised release continues after deportation and citing a probation

manual which specifies that the supervision will simply be "inactive" until the expiration date).  While the Supreme Court in *Johnson* did state that being released from imprisonment meant being "freed from confinement," it also specifically mentioned a defendant remaining in BOP custody, and it continued to use only the statutory term "imprisonment" and not the term administrative detention or any other possible variation of the term "confinement."  529 U.S. at 57.  Simply because he remained confined while being administratively detained by ICE does not mean he also remained "imprisoned."

Moreover, it is clear under federal immigration law that administrative detention of an alien is not the same as imprisonment for a crime.  *See, e.g.*, 8 U.S.C. § 1226(c)(1) (providing that the Attorney General is required to take aliens who have committed felonies into custody "when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense"); 8 U.S.C. § 1229a(a)(3) (eliminating the district courts' jurisdiction to deport an alien defendant); 8 U.S.C. § 1231(a)(4)(A) (providing that "the Attorney General may not remove an alien who is sentenced to imprisonment until the alien is released from imprisonment"); 18 U.S.C. § 3583(d) (providing that if "an alien defendant is subject to deportation, the court may provide, as a condition of supervised release, that he be deported and remain outside the United States, and may order that he be delivered to a duly authorized immigration official for such deportation").  If the transfer of an alien from BOP custody to ICE custody is itself a possible condition of supervised release, the resulting administrative detention by ICE cannot also be part of the alien's term of imprisonment.

While Garcia's administrative detention and subsequent deportation by ICE may be related to a crime that he previously committed, that relationship does not turn such detention into "imprisonment" as contemplated by § 3624(e).

We therefore hold that administrative detention by ICE does not qualify as imprisonment and that, for purposes of § 3624(e), Garcia was "released from imprisonment" the moment he was transferred from BOP custody to ICE custody to await deportation.[4]

## B.   Facts in the Record

This court stated in its April 6, 2010 Order that "the record does not plainly establish . . . the commencement date for the supervised release term imposed in connection with the 2003 illegal reentry conviction." The parties cite to various, and at times conflicting, documents in the record, none of which conclusively establish on what date Garcia was transferred from BOP custody to ICE custody, or on what date he was actually deported.

This conflict was not directly addressed by the district court, and we find the appellate record insufficient to resolve it on appeal.  Therefore, we make a limited remand to the district court for the purpose of answering the following questions: (1) On what date did Garcia complete his 37-month term of imprisonment for his 2003 illegal re-entry conviction?  (2) On what date was Garcia transferred from BOP custody to ICE custody? And (3) on what date was Garcia actually deported?  The district court may conduct a hearing, take testimony, and receive additional evidence, as it deems appropriate, in order to make the necessary factual determinations.  The district court shall make a written report of its factual determinations.  Such written report, along with a transcript of any hearing(s) and any additional evidence received by the district court, shall be promptly submitted to this court for review by this same panel. This panel will then make a final determination as to whether the district court

___

[4] At oral argument, defense counsel noted that the transfer of custody from BOP to ICE may have been a "transfer by declaration" as opposed to a physical transfer of Garcia from one place of confinement to another.  This distinction, if true, does not change our analysis—the moment of transfer (physical or by declaration) qualifies as the moment Garcia was "released from imprisonment" under § 3624(e).

had jurisdiction to revoke Garcia's three-year term of supervised release and sentence him to an additional 18-month term of imprisonment.

## III.  CONCLUSION

For the foregoing reasons, we make a LIMITED REMAND to the district court.  This panel retains jurisdiction over the case.