# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 13-41020

United States Court of Appeals
Fifth Circuit

**FILED**

August 14, 2014

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

ISRAEL NOE JUAREZ-VELASQUEZ,

Defendant-Appellant.

Appeal from the United States District Court
for the Southern District of Texas

Before STEWART, Chief Judge, and WIENER, and COSTA, Circuit Judges.

CARL E. STEWART, Chief Judge:

This is an appeal from the district court's revocation of Defendant Israel Juarez-Velasquez's (Juarez) supervised release. Juarez argues on appeal that his supervised release expired prior to the date the United States Probation Office (Probation) petitioned the district court for revocation—thereby divesting the district court of jurisdiction over his supervised release. For the reasons explained herein, we vacate the district court's order revoking Juarez's supervised release.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In June 2007, Juarez, an undocumented Mexican national, was deported from the United States after being convicted of an aggravated felony—Possession of Methamphetamine with Intent to Sell/Deliver. Approximately

No. 13-41020

one month after his deportation, Juarez unlawfully reentered the United States. On June 27, 2008, United States Customs and Border Protection Agents apprehended Juarez in Texas. On July 8, 2008, the government indicted him for being "an alien" unlawfully present in the United States "who had previously been . . . deported, and removed, after having been convicted of an aggravated felony." On July 15, 2008, Juarez pleaded guilty to the July 8, 2008 indictment (2008 reentry case). The district court sentenced Juarez to twenty-four months' imprisonment to be followed by a three-year term of supervised release. Juarez completed his twenty-four month term of imprisonment and was released from federal custody on March 25, 2010. He was immediately taken into custody by the Palm Beach County, Florida Sheriff's Department to face charges for homicide and burglary. Juarez was acquitted of those charges on September 3, 2010. He remained in state custody until the conclusion of his homicide and burglary trial, and on September 15, 2010, Juarez was deported to Mexico.

In August 2012, Juarez unlawfully reentered the United States again and was apprehended in Texas on October 3, 2012, during a traffic stop. Juarez was arrested for public intoxication and possession of marijuana, and placed in the Harlingen City Jail. On October 4, 2012, Immigration and Customs Enforcement (ICE) agents encountered Juarez while he was in state custody in Texas and ascertained that he was unlawfully present in the United States. An immigration detainer was issued against Juarez that day. He remained in state custody until his state charges were dismissed. On April 12, 2013, the day after his state charges were dismissed, Juarez was transferred to federal custody pursuant to the immigration detainer. On May 7, 2013, the government charged him with being unlawfully present in the United States after being deported for committing an aggravated felony. Juarez pleaded guilty to that charge on May 30, 2013 (2013 reentry case). The district court

sentenced him to 42 months' imprisonment to be followed by a three-year term of supervised release.

On May 31, 2013, Probation petitioned the district court to revoke Juarez's supervised release in his 2008 reentry case. Probation moved for revocation on the grounds that Juarez violated his probation in four ways: (1) he was an "alien unlawfully found in the United States after deportation, having previously been convicted of an aggravated felony; (2) he unlawfully possessed marijuana; (3) he reentered the United States illegally; and (4) he drove a motor vehicle without Probation's permission."

Juarez admitted to all of the alleged supervised release violations with the exception of marijuana possession. On September 4, 2013, the district court revoked Juarez's supervised release in the 2008 reentry case and sentenced him to eight months' imprisonment to be served consecutively to the forty-two month sentence imposed in the 2013 reentry case. Juarez filed a motion to reconsider the sentence imposed in his 2013 reentry case. Therein, he requested an order clarifying that his sentence began on October 4, 2012—the day he encountered ICE agents while in the Texas jail—for the purpose of receiving credit for time served. The district court granted Juarez's request and stated:

> While initially arrested by local authorities, [Juarez] was never prosecuted by those authorities and was held in jail pursuant to the detainer placed upon him by the ICE authorities. Therefore, this Court concludes that his time in federal custody began on October 4, 2012, the day he was encountered by federal agents, and this Order will be reflected in this Court's ultimate judgment.

3

No. 13-41020

## II. DISCUSSION

### A.

Juarez challenges, for the first time on appeal, the district court's jurisdiction to revoke his supervised release in the 2008 reentry case. Although Juarez failed to raise an objection to the district court's jurisdiction below, we review his claim de novo. *See In re Berman-Smith*, 737 F.3d 997, 1000 (5th Cir. 2013) (per curiam) ("Jurisdiction may not be waived, and federal appellate courts have a special obligation to consider not only their own jurisdiction, but also that of the lower courts."); *United States v. Meza*, 620 F.3d 505, 507 (5th Cir. 2010) (reviewing jurisdictional challenge to Appellant's sentence de novo even though she failed to object below).

The district court, "in imposing a sentence to a term of imprisonment for a felony or a misdemeanor, may include as a part of the sentence a requirement that the defendant be placed on a term of supervised release after imprisonment." 18 U.S.C. § 3583(a). "A district court has jurisdiction to revoke a defendant's supervised release during the term of supervised release, or within a reasonable time [thereafter] if a summons or warrant regarding a supervised release violation was issued prior to the expiration of the term of supervised release." *United States v. Jackson*, 426 F.3d 301, 304 (5th Cir. 2005) (per curiam) (citing 18 U.S.C. §3583(i)). As provided for by the applicable statute:

> The term of supervised release commences on the day the person is released from imprisonment and runs concurrently with any Federal, State or local term of probation or supervised release or parole for another offense to which the person is subject or becomes subject during the term of supervised release. A term of supervised release does not run during any period in which the person is *imprisoned in connection with a conviction for a Federal, State, or local crime* unless the imprisonment is for a period of less than 30 consecutive days.

18 U.S.C § 3624(e) (emphasis added). Section 3624(e) makes clear that tolling a term of supervised release is appropriate only when the defendant's imprisonment is connected to a criminal conviction. *See United States v. Molina-Gazca*, 571 F.3d 470, 474 (5th Cir. 2009) ("Pretrial detention falls within 'any period in which the person is imprisoned' and tolls the period of supervised release, provided a conviction ultimately occurs.").

Juarez argued in his original brief that his three-year term of supervised release commenced in March 2010 and concluded in March 2013. Therefore, according to Juarez, the district court erred by revoking his supervised release in May 2013—after his term expired in March. His original brief asserted that although he was released from federal custody to pretrial detention in Florida to face state charges in 2010, he was never convicted of the offenses for which he was detained. Therefore, according to Juarez, his detention in Florida was not in connection with a conviction—as required by § 3624(e)—and did not toll his term of supervised release.

The government seemingly conceded Juarez's argument that his pretrial detention in Florida did not toll his supervised release. In its briefing, however, the government "strenuously disagree[d] with Juarez that his supervised release expired on March 25, 2013, three years to date [sic] after he was released from BOP imprisonment." The government claimed that Juarez's supervised release was tolled on October 4, 2012 when federal agents in Texas issued an immigration detainer against him. The government noted that "[o]n that date Juarez had served 2 years, 5 months, and 9 days of his three-year supervised release term." According to the government, Juarez's incarceration from October 4, 2012 through September 4, 2013 was "in connection with" his 2013 reentry conviction. Therefore, the government claims, his term of supervised release tolled during that period pursuant to § 3624(e).

5

No. 13-41020

In reply, Juarez argued that the government failed to respond to his initial claim that his period of incarceration in Florida did not toll his supervised release. Instead, according to Juarez, the government raised "a new, factually-distinct period of pretrial detention . . . to argue for a separate period of tolling as a defensive argument." Accordingly, Juarez fully addressed the government's newly-presented theory in his reply brief. He argued that the Texas state charges for which he was detained resulted in no conviction. Juarez emphasized the fact that "[d]uring the entire time that [he] was in state custody, the [2013 reentry] charge . . . was not even in existence." "Consequently, [according to Juarez,] there was no factual relation between the period of state pretrial detention and the federal illegal reentry charge because the federal charge did not come into existence until after the period of pretrial detention had terminated."

**B.**

It is well-established that any period of incarceration that tolls supervised release must be "in connection with a conviction." *Jackson*, 426 F.3d at 304; 18 U.S.C. § 3624(e). In 2009, we addressed, *inter alia*, the question of whether a term of pretrial detention could toll supervised release. *Molina-Gazca*, 571 F.3d at 472. Answering in the affirmative, we adopted the Sixth Circuit's rationale in *United States v. Goins*, 516 F.3d 416 (6th Cir. 2008) and made clear that pretrial detention indeed tolls a term of supervised release so long as it is in connection with a conviction. *Molina-Gazca*, 571 F.3d at 473–74. The question before us today focuses squarely on whether, under these facts, the immigration detainer imposed against Juarez resulted in imprisonment in connection with a conviction.

To properly address this issue, we must consider the practical and legal implications of an immigration detainer. We have explained that "'[f]iling a detainer is an informal procedure in which the INS informs prison officials that

a person is subject to deportation and requests that officials give the INS notice of the person's death, impending release, or transfer to another institution.'"[1] *Zolicoffer v. U.S. Dep't. of Justice*, 315 F.3d 538, 540 (5th Cir. 2003) (per curiam) (quoting *Giddings v. Chandler*, 979 F.2d 1104, 1105 n.3 (5th Cir. 1992)). We have also stated that for purposes of § 3624(e), "administrative detention by ICE is not the same as imprisonment by the BOP." *See United States v. Garcia-Rodriguez*, 640 F.3d 129, 132 (5th Cir. 2011) (per curiam). In *Garcia-Rodriguez*, the defendant, after completing his federal sentence, was transferred from BOP custody to ICE custody to await deportation. *Id.* at 130. After being deported, the defendant illegally reentered the United States and was arrested in Texas for criminal trespass. *Id.* Probation filed a warrant petition alleging that the defendant violated his supervised release. *Id.* The defendant challenged the revocation warrant on the grounds that the district court did not have jurisdiction to revoke his supervised release because the warrant issued after his term of supervised release expired. *Id.* at 130–31. He argued that his supervised release commenced the moment he was transferred from BOP custody to ICE custody based upon the immigration detainer. *Id.* at 131. The government argued that his administrative detention "continued his confinement." *Id.* at 132. We held "that **administrative detention by ICE does not qualify as imprisonment** and that, for purposes of § 3624(e), Garcia was 'released from imprisonment' the moment he was transferred from BOP custody to ICE custody to await deportation." *Id.* at 134 (emphasis added).

---

[1] "On March 1, 2003, most of the functions of the Immigration and Naturalization Service were transferred to the Bureau of Immigration and Customs Enforcement, and the Immigration and Naturalization Service ceased to exist." *Kawashima v. Holder*, 132 S.Ct. 1166, 1171 n.1 (2012). Therefore, for purposes of our analysis in this case, INS and ICE are synonymous.

No. 13-41020

Similarly in this case, Juarez was held in pretrial detention on state charges when ICE agents imposed the immigration detainer. Throughout the duration of Juarez's pretrial detention in Texas, no federal criminal charges were pending. The immigration detainer was simply an administrative mechanism that ensured that upon the completion of his state criminal matter, Juarez would be transferred to federal custody to face any immigration consequences that accrued as a result of his illegal reentry. *See Zolicoffer*, 315 F.3d at 540. Indeed, the day after Juarez's Texas charges were dismissed, he was released and immediately transferred to federal custody. The day after Juarez was transferred to federal custody, the United States filed illegal reentry charges against him. At that point, and not before, Juarez was imprisoned in connection with a conviction—the 2013 reentry case to which he eventually pleaded guilty.

## C.

The government also argues that because Juarez received credit—in his 2013 reentry case—for time served during his pretrial detention in Texas, that period of detention tolled his supervised release in the 2008 reentry case. We disagree.

The district court, upon Juarez's motion requesting credit for time served, entered an order stating that Juarez's detention in the 2013 reentry case began on October 4, 2012, when he was held in a Texas jail. The district court stated:

> While initially arrested by local authorities, [Juarez] was never prosecuted by those authorities and was held in jail pursuant to the detainer placed upon him by the ICE authorities. Therefore, this Court concludes that his time in federal custody began on October 4, 2012, the day he was encountered by federal agents. . . .

8

No. 13-41020

The wisdom of the district court's order is not at issue in this appeal.[2] Nonetheless, the Supreme Court has made clear that the Attorney General, not the district court, holds the responsibility for administering sentences. *United States v. Wilson*, 503 U.S. 329, 335 (1992) (citing 18 U.S.C. § 3621(a)); *see also United States v. Setser*, 607 F.3d 128, 132–33 (5th Cir. 2010) (holding that 18 U.S.C. § 3585(b) does not authorize a district court to award credit for time served); *United States v. Binion*, 981 F.2d 1256, *1 (5th Cir. 1992) (per curiam) (unpublished) ("The district court acted beyond its jurisdiction in undertaking to consider crediting time previously served regardless of its conclusion."). Pursuant to Supreme Court and Fifth Circuit precedent, the district court likely exceeded its jurisdiction by ordering that Juarez receive credit for time served during his pretrial detention in Texas. Therefore, we decline to consider the district court's potentially erroneous order in our analysis of whether Juarez's pretrial detention in Texas tolled his supervised release.[3]

---

[2] We note, however, that the district court incorrectly found that Juarez was held in jail *pursuant to the detainer placed upon him by the ICE authorities*. Such a finding necessarily implies that the ICE detainer kept Juarez in jail—during the relevant time period—when he would have otherwise been released. The record indicates that the Cameron County District Attorney's Office dismissed their charges against Juarez on April 11, 2013. He was released from state custody on April 12, 2013—the very next day. Therefore, the state charges were the impetus for the entire duration of Juarez's pretrial detention in Texas—not the immigration detainer.

[3] The government also argued that Juarez waived appellate review of his challenge to the district court's jurisdiction for two reasons. First, according to the government, Juarez failed to adequately brief his claim on appeal. We disagree. Juarez's initial brief made arguments challenging the district court's jurisdiction to revoke his supervised release pursuant to 18 U.S.C. § 3624. Additionally, Juarez provided Fifth Circuit case law and other persuasive authority to support his position that the district court exceeded its jurisdiction. Any arguments raised for the first time in his reply brief were in direct response to newly-raised arguments in the government's brief.

Second, the government alleged that Juarez's request that he receive credit for the time he spent in pretrial detention in Texas affirmatively waived any challenge on appeal to the district court's jurisdiction to revoke his supervised release. The government's argument is without merit. The government cites no authority supporting the proposition that a defendant's decision to seek credit for time served in one case necessitates waiver of

No. 13-41020

## III. CONCLUSION

For the reasons explained above, we conclude that Juarez's terms of pretrial detention—in Florida and Texas—did not toll his supervised release. Neither period of detention was in connection with a conviction and the immigration detainer imposed during Juarez's Texas pretrial detention was an administrative hold that did not amount to imprisonment in connection with a conviction for purposes of § 3624(e). Therefore, we hold that the district court did not have jurisdiction to revoke Juarez's supervised release.

Accordingly, we vacate the district court's revocation of Juarez's supervised release. We also vacate the 8-month sentence imposed as a result of the revocation.

---

potentially valid arguments regarding the district court's jurisdiction in a separate case. As stated previously, "[j]urisdiction may not be waived, and federal appellate courts have a special obligation to consider not only their own jurisdiction, but also that of the lower courts." *In re Berman-Smith*, 737 F.3d at 1000.