*United States v. Freeman*

# In the
# United States Court of Appeals
## for the Second Circuit

———

AUGUST TERM 2023

No. 23-6394-cr

UNITED STATES OF AMERICA,
*Appellee,*

v.

RODGER FREEMAN,
*Defendant-Appellant.*

———

On Appeal from the United States District Court for the Eastern District of New York

———

ARGUED: DECEMBER 13, 2023
DECIDED: APRIL 23, 2024

———

Before: WALKER, CABRANES, and BIANCO, *Circuit Judges.*

———

A question arises concerning the commencement of a term of supervised release under 18 U.S.C. § 3624(e). Defendant-Appellant Rodger Freeman was convicted of a felony in the United States District Court for the Eastern District of New York (Kiyo Matsumoto, *Judge*) and sentenced to a term of imprisonment to be followed by a term of supervised release. Upon completion of his federal prison sentence, Freeman was transferred to New York State custody to face a pending indictment for which he was convicted. On appeal, the New York Appellate Division vacated Freeman's state convictions for procedural error and ordered a new trial. Freeman was then held in state custody for over four years pending retrial. The state ultimately dismissed the charges against Freeman and released him from pre-trial detention.

We consider whether Freeman's term of supervised release commenced upon his release from federal custody or upon his release from pre-trial detention by the state. If his term of supervised release commenced upon his release from federal custody, then the next question is whether Freeman's federal term of supervised release was "tolled" during his years in state custody following the vacatur of his state convictions.

The District Court held that, pursuant to *United States v. Johnson*, 529 U.S. 53 (2000), a term of federal supervised release does not begin

2

until a defendant's imprisonment has ended. We agree. Accordingly, we need not address the question of tolling.

The order of the District Court is **AFFIRMED**.

JUDGE WALKER concurs in the judgment and opinion of the Court and files a separate opinion.

———

MATTHEW SKURNIK, Assistant United States Attorney (Nicholas J. Moscow, Assistant United States Attorney, *on the brief*), *on behalf of* Breon Peace, United States Attorney for the Eastern District of New York, Brooklyn, NY, *for Appellee.*

EDWARD S. ZAS, Federal Defenders of New York, Inc., Appeals Bureau, New York, NY, *for Defendant-Appellant.*

———

JOSÉ A. CABRANES, *Circuit Judge*:

We consider whether 18 U.S.C. § 3624(e) mandates that supervised release commence upon an individual's release from federal custody or upon an individual's release from imprisonment. The United States District Court for the Eastern District of New York (Kiyo Matsumoto, *Judge*) held the latter. We agree. This interpretation of 18 U.S.C. § 3624(e) is consistent with the Supreme Court's reasoning in *United*

*States v. Johnson*, 529 U.S. 53 (2000). Under this interpretation, Defendant-Appellant Rodger Freeman did not begin his term of federal supervised release until his release from pre-trial detention by New York State on January 17, 2023. Accordingly, we need not address the question of whether his term of supervised release was "tolled" during his years in state custody.

The order of the District Court is **AFFIRMED**.

## BACKGROUND

Defendant-Appellant Rodger Freeman seeks review of the April 19, 2023 order of the District Court denying his request for termination of his three-year term of supervised release.

In 2012, Freeman pleaded guilty to possessing a firearm after having been convicted of a felony, in violation of 18 U.S.C. § 922(g).[1] He was sentenced principally to 37 months of imprisonment with credit for time served and three years of supervised release. Upon completion of his federal prison sentence on October 30, 2013, Freeman was transferred from the custody of the Federal Bureau of Prisons

---

[1] 18 U.S.C. § 922(g) provides in relevant part:

> It shall be unlawful for any person who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year . . . to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

4

("BOP") to New York State custody to face a pending indictment in Kings County, New York. Following a jury trial, Freeman was convicted of attempted murder in the first degree, conspiracy in the second degree, two counts of intimidating a victim or a witness in the first degree, and criminal possession of a weapon in the second degree.[2]

In 2018, the New York Appellate Division in the Second Department vacated Freeman's state convictions for procedural error and ordered a new trial.[3] Freeman was then held in state custody for over four years pending retrial. On January 17, 2023, the state dismissed all charges related to the convictions and released Freeman from pre-trial state detention. Until that date, Freeman had been imprisoned by federal and state authorities continuously since January 19, 2011.[4]

Following Freeman's release from state custody, the United States Probation Office for the Eastern District of New York ("Probation")

---

[2] *See People v. Freeman*, No. 2406/2011, 2014 WL 4146656 (N.Y. Sup. Ct. May 27, 2014).

[3] The procedural error at issue, the Appellate Division held, was that the trial court had improperly denied one of the defense's peremptory challenges. *See People v. Freeman*, 164 A.D.3d 1257, 1258 (N.Y. App. Div. 2018).

[4] January 19, 2011, was the date of the arrest leading to Freeman's federal conviction. *See* Appendix for Defendant-Appellant ("A") 16, 18.

instructed Freeman to report to Probation to begin his three-year term of federal supervised release. On March 20, 2023, Freeman moved in the District Court to have his supervised release term ended, arguing that his federal term of supervised released had begun to run upon his release from imprisonment by the BOP on October 30, 2013, and "was not tolled during his eleven years of detention in state custody."[5]

While acknowledging "the very unique circumstances of this case," the District Court denied Freeman's request, finding that Freeman's "term of supervised release began 'on the day the prisoner in fact [was] freed from confinement,' not on the date that [the] Defendant would have been released absent his later-vacated convictions."[6] Freeman timely appealed.

**DISCUSSION**

We are asked to interpret 18 U.S.C. § 3624(e), which governs the commencement and tolling[7] of a term of supervised release. We review interpretation of statutes *de novo*.[8]

18 U.S.C. § 3624(e) provides, in relevant part, that

---

[5] A 24.

[6] A 10 (quoting *Johnson,* 529 U.S. at 57-58).

[7] Black's Law Dictionary defines the verb "to toll" as "to stop the running of" a time period. *See* Toll, Black's Law Dictionary (11th ed. 2019).

[8] *See United States v. Epskamp*, 832 F.3d 154, 160 (2d Cir. 2016).

[a] prisoner whose sentence includes a term of supervised release after imprisonment shall be released by the Bureau of Prisons to the supervision of a probation officer who shall, during the term imposed, supervise the person released to the degree warranted by the conditions specified by the sentencing court. The term of supervised release commences on the day the person is released from imprisonment and runs concurrently with any Federal, State, or local term of probation or supervised release or parole for another offense to which the person is subject or becomes subject during the term of supervised release. A term of supervised release does not run during any period in which the person is imprisoned in connection with a conviction for a Federal, State, or local crime unless the imprisonment is for a period of less than 30 consecutive days.

The question presented is whether a federal term of supervised release commences upon an individual's release *from BOP custody* or upon an individual's release *from imprisonment*.

**I.**

The District Court held that Freeman's term of supervised release commenced upon his eventual release from imprisonment by the state on January 17, 2023. We agree.

*First*, 18 U.S.C. § 3624(e) provides that "[t]he term of supervised release commences on the day the person is released from

7

imprisonment." The Supreme Court considered this statute in *Johnson*, 529 U.S. 53:

> [Section 3624(e) directs in relevant part] that a supervised release term does not commence until an individual "is released from imprisonment." There can be little question about the meaning of the word "release" in the context of imprisonment. It means "[t]o loosen or destroy the force of; to remove the obligation or effect of; hence to alleviate or remove; . . . [t]o let loose again; to set free from restraint, confinement, or servitude; to set at liberty; to let go." Webster's New International Dictionary 2103 (2d ed. 1949). As these definitions illustrate, the ordinary, commonsense meaning of release is to be freed from confinement. *To say respondent was released while still imprisoned diminishes the concept the word intends to convey.*[9]

To hold that Freeman was "released from imprisonment" on October 30, 2013—while he in fact was continuously imprisoned by the state—would be inconsistent with the Supreme Court's interpretation of the statutory language. We thus hold that Freeman's term of supervised release commenced on January 17, 2023, the date of his release by the state.

Freeman urges us to avoid applying *Johnson*. Principal among his arguments is that the application of *Johnson* in this case would be at odds with the Fifth Circuit's understanding of *Johnson* in *United States*

---

[9] *Johnson*, 529 U.S. at 57 (emphasis added).

*v. Garcia-Rodriguez*, 640 F.3d 129 (5th Cir. 2011). We disagree. In *Garcia-Rodriguez*, the Fifth Circuit held that administrative detention by the United States Immigration and Customs Enforcement ("ICE") following completion of a federal prison sentence "does not qualify as imprisonment and that, for the purposes of § 3624(e), [the defendant] was 'released from imprisonment' the moment he was transferred from BOP custody to ICE custody to await deportation."[10] The Fifth Circuit reasoned that "[i]f the transfer of an alien from BOP custody to ICE custody is itself a possible condition of supervised release, the resulting administrative detention by ICE cannot also be part of the alien's term of imprisonment."[11] Here, Freeman does not dispute that he remained continuously imprisoned—in federal and later state custody—until January 17, 2023. Accordingly, our decision is not at variance with the Fifth Circuit's interpretation of § 3624(e).

*Second*, our holding is consistent with the design and purpose of supervised release, which is to "assist individuals in their transition to

---

[10] *Garcia-Rodriguez*, 640 F.3d at 134.

[11] *Garcia-Rodriguez*, 640 F.3d at 133-34. For example, 18 U.S.C. § 3583(d) provides in relevant part, "[i]f an alien defendant is subject to deportation, the court may provide, *as a condition of supervised release*, that he be deported and remain outside the United States, and may order that he be delivered to a duly authorized immigration official for such deportation" (emphasis added).

community life."[12] It is therefore reasonable to understand § 3624(e) as requiring that supervised release commence only when an individual is no longer imprisoned by any authority and is available for supervision by the federal Probation Office. Indeed, § 3583(e)(1)-(2) anticipates equitable considerations that may arise following the imposition of a term of supervised release, and provides the supervised individual with procedures to petition for relief.[13]

## II. CONCLUSION

For the foregoing reasons, we **AFFIRM** the order of the District Court.

---

[12] *Johnson*, 529 U.S. at 59.

[13] Because Freeman's term of supervised release did not commence until his release from state custody on January 17, 2023, we do not address the question of whether Freeman's time in state custody tolled his federal term of supervised release.

WALKER, *Circuit Judge*, concurring:

I concur in the majority's opinion but write separately to make two brief points.

First, suppose Freeman had served out his initial federal sentence and then been transferred to pre-trial detention in a different federal prison to face a second federal charge, which eventually led to a second conviction and sentence. Imagine that this second federal conviction was later overturned, but that Freeman continued to be detained pending retrial until the government ultimately decided not to prosecute further. This appeal could not have been brought under those circumstances because there could be no argument that, upon the completion of his initial federal sentence, Freeman had been "released from imprisonment." 18 U.S.C. § 3624(e). That outcome should not differ simply because Freeman was instead transferred to pre-trial detention in state prison after completing his initial federal sentence. The purpose of supervised release is to "fulfill[] rehabilitative ends, distinct from those served by incarceration."[1] It therefore makes sense to commence supervised release only once an individual is no longer imprisoned by any authority and can begin the process of reintegrating into society. This is to the benefit of the releasee, as well as to the broader public.[2]

Second, while it may seem unfair to have an extended period of incarceration, whether state or federal, unsupported by a final conviction, it is worth noting that Freeman has the opportunity to seek relief from the district court under the ameliorative provisions of 18 U.S.C. § 3583(e). Section 3583(e) empowers the district court to "modify [or] reduce" Freeman's conditions of supervised release "at any time prior to the expiration . . . of [his] term of supervised release." 18 U.S.C. § 3583(e)(2). And, because Freeman has now completed more than a year of his supervised release term,[3] the district court also

---

[1] *United States v. Johnson*, 529 U.S. 53, 59 (2000).

[2] *See id.* at 59–60.

[3] Freeman began his term of supervised release on January 17, 2023.

2

has the authority, if it chooses, to terminate the remainder of that term. *See* 18 U.S.C. § 3583(e)(1). This case is undoubtedly "unique," as the district court has already recognized:[4] Freeman was held in either federal or state custody for just shy of twelve years and approximately nine of those years were in conjunction with state charges that were ultimately dismissed. I expect that the district court will consider these distinctive circumstances in deciding how long Freeman's supervised release should continue.

---

[4] A 10.