**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-4341
_____

UNITED STATES OF AMERICA

v.

JOSEPH MERLINO,

Appellant

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Criminal No. 2-99-cr-00363-001)
District Judge: Honorable R. Barclay Surrick
_____

Argued April 14, 2015
_____

Before: AMBRO, VANASKIE, and SHWARTZ, *Circuit
Judges*

(Opinion Filed: May 5, 2015)

Zane D. Memeger, Esq.
David E. Fritchey, Esq.

Joseph F. Minni, Esq.
David E. Troyer, Esq. [*ARGUED*]
Office of the United States Attorney
615 Chestnut Street
Suite 1250
Philadelphia, PA 19106
    *Counsel for Appellee*

Edwin J. Jacobs, Jr., Esq. [*ARGUED*]
Michael F. Myers, Esq.
Jacobs & Barbone
1125 Pacific Avenue
Atlantic City, NJ 08401

Gary S. Silver, Esq.
Silver Legal Services
2000 Market Street
Suite 2925
Philadelphia, PA 19103
    *Counsel for Appellant*

---------

OPINION OF THE COURT

---------

VANASKIE, *Circuit Judge.*

At issue on this appeal is whether a District Court has jurisdiction to revoke supervised release when neither an arrest warrant nor a summons concerning an alleged violation of supervised release was issued before the term of supervised release expired. We hold that 18 U.S.C. § 3583(i) is a jurisdictional statute requiring that a warrant or summons

2

must issue before the expiration of supervised release in order for a District Court to conduct revocation proceedings. Because the summons in this matter was issued after the termination of supervised release, we conclude that the District Court lacked subject-matter jurisdiction to revoke supervised release. Accordingly, we will vacate the District Court's order revoking supervised release and imposing a prison term on Appellant Joseph Merlino.

I.

Section 3583(i) of Title 18 of the United States Code provides:

> Delayed revocation.—The power of the court to revoke a term of supervised release for violation of a condition of supervised release, and to order the defendant to serve a term of imprisonment . . . extends beyond the expiration of the term of supervised release for any period reasonably necessary for the adjudication of matters arising before its expiration *if, before its expiration, a warrant or summons has been issued* on the basis of an allegation of such a violation.

*Id.* (emphasis added). We must consider the meaning of this statutory provision in the following context.

3

Merlino, the reputed former head of the Philadelphia La Cosa Nostra, commenced a three-year term of supervised release on September 7, 2011. On June 18, 2014, law enforcement observed Merlino at a cigar bar in Boca Raton, Florida, conversing with several convicted felons, including John Ciancaglini, one of Merlino's former co-defendants. The Probation Office concluded that this contact violated the terms of Merlino's supervised release. Over two months later, on August 26, Merlino's probation officer presented a revocation petition to the District Court.

On September 2, the District Court ordered the issuance of a summons directing Merlino to appear for a revocation hearing. Either later that day or the following day, a deputy clerk called defense counsel in an effort to secure a mutually agreeable hearing date for the parties. Defense counsel, citing work obligations and an upcoming medical procedure, stated that he expected to be unavailable until December. The Government informed the deputy clerk that it was "reluctant" to accommodate any substantial delay. App. 72. In response, defense counsel asked the deputy clerk "to wait until the end of the following week to set a date" in the hope that he could clear his schedule. *Id.* The deputy clerk relayed this request to the District Court judge, who assented. On September 11, defense counsel informed the clerk that he could be available in October. On September 16, the clerk issued a "notice of hearing" summoning Merlino for a revocation hearing on October 10.[1]

_____

[1] Specifically, the notice stated:

On October 6, defense counsel notified the District Court of his belief that the Court lacked jurisdiction over the revocation proceedings because no warrant or summons had issued before the expiration of Merlino's term on September 6, 2014. At a hearing on the jurisdictional contest, the deputy clerk who had spoken to counsel testified that, absent counsel's request for a delay, the notice of hearing would have issued on September 2 or 3, before the expiration of supervised release. On that basis, the Court concluded that the deadline in § 3583(i) had been equitably tolled, such that the notice filed on September 16 was timely.

On October 24, the District Court conducted a revocation hearing and found that Merlino had violated the terms of his release by associating with Ciancaglini. The Court sentenced Merlino to four additional months'

> TAKE NOTICE, That Petition of the Probation Officer, a copy of which is attached, charges you with certain violation[s] which may warrant revocation of your supervised release. You are directed to appear at the United States Courthouse . . . on Friday, October 10, 2014, at 10:00 a.m. in Courtroom 8-A, at which time you will be given a hearing on the charges . . . .

Supp. App. 2 (emphasis omitted).

5

imprisonment, which Merlino began serving on January 15, 2015. He timely appealed.

## II.

The District Court claimed jurisdiction to revoke supervised release under 18 U.S.C. § 3583(i). We have jurisdiction under 28 U.S.C. § 1291. Our review of jurisdictional issues is plenary. *United States v. Sczubelek*, 402 F.3d 175, 178 (3d Cir. 2005).

## III.

### A.

The overarching question presented here is whether the District Court, on these facts, had subject-matter jurisdiction to hold a revocation hearing when no warrant or summons was issued prior to the expiration of Merlino's supervised release. We begin with the principle that "[f]ederal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994) (citations omitted). In this matter, the pertinent congressional enactment states that "[t]he power of the court to revoke a term of supervised release . . . extends beyond the expiration of the term of supervised release . . . if, before its expiration, a warrant or summons has been issued . . . ." 18 U.S.C. § 3583(i). This language is clear and unequivocal. Read literally, a warrant or summons must issue before a term of supervised release expires in order for the District Court to exercise its authority to revoke supervised release. The District Court, evidently acknowledging the import of this condition, nevertheless

6

found that § 3583(i) was subject to "equitable tolling." We disagree, and to explain why we hold that the timely issuance of a summons or warrant is jurisdictional, some historical context is in order.

B.

In 1948, Congress provided that, prior to the expiration of the maximum five-year period of probation, the district court had the authority to "issue a warrant for [the probationer's] arrest for violation of probation occurring during the probation period." 18 U.S.C. § 3653 (repealed 1987). Once the probationer was arrested on the warrant, he was to be taken before the court "as speedily as possible," after which the court had the authority to conduct revocation proceedings. *Id.* Over time, several federal circuits addressed the question of whether a federal district court retained subject-matter jurisdiction when a probationer allegedly violated the terms of probation shortly before the expiration date, thus requiring the revocation hearing to occur after the term's expiration. Our own view was that so long as the probationer was produced before the district court "[a]s speedily as possible after arrest" in accordance with § 3653, we saw no good reason "why a court should arbitrarily lose jurisdiction . . . when the alleged probation violation took place within [the five-year probation window] and the probationer was formally notified within that period that the Government would seek to revoke his probation." *United States v. Bazzano*, 712 F.2d 826, 835 (3d Cir. 1983).

Although our sister circuits unanimously agreed that Congress could not have intended for district courts to abruptly lose jurisdiction over already initiated revocation proceedings at the expiration of the five-year window,

7

varying standards emerged as to the precise triggering event for continuing jurisdiction. For our part, we required that "formal revocation proceedings [be] commenced (by arrest warrant or otherwise) within the five-year period." *Id*. The Fourth, Seventh, and Eleventh Circuits identified the trigger as the Government's filing of the revocation petition prior to the term's expiration. *See United States v. Barton*, 26 F.3d 490, 491–92 (4th Cir. 1994); *United States v. Schimmel*, 950 F.2d 432, 436 (7th Cir. 1991); *United States v. O'Quinn*, 689 F.2d 1359, 1360–61 (11th Cir. 1982). The Eighth Circuit found jurisdiction even where no revocation petition had been filed and no arrest warrant had issued, but the probationer consensually appeared before the district court prior to the expiration of his term. *United States v. Strada*, 503 F.2d 1081, 1083 (8th Cir. 1974).

In 1994, Congress amended 18 U.S.C. § 3583 to make clear that the exercise of judicial authority over supervised releasees depended upon the issuance of a warrant or summons while the releasee was still under supervision.[2] According to an "Explanation of Provisions" included in the Congressional Record, § 3583(i) "provid[es] continued court jurisdiction to adjudicate alleged supervised release violations and revoke supervised release" after its expiration. 137 Cong. Rec. S7769 (1991). And in the view of the Second Circuit, "the most likely purpose of the amendment was to make absolutely clear Congress' earlier intention that sentencing courts have the authority to hold hearings to revoke or extend

[2] A nearly identical provision provides for continuing jurisdiction over violations of federal probation. *See* 18 U.S.C. § 3565(c).

8

supervised release after expiration of the original term if they issue a summons or warrant during the release period." *United States v. Morales*, 45 F.3d 693, 701 (2d Cir. 1995). *See also Sczubelek*, 402 F.3d at 179.

C.

We now turn to the Government's argument that § 3583(i) is subject to equitable tolling because it is not a jurisdictional provision. We assess this position in light of *Dolan v. United States*, 560 U.S. 605, 610 (2010), in which the Supreme Court provided guidelines for the classification of federal statutory deadlines, the consequences for noncompliance with such deadlines, and the availability of tolling. The *Dolan* framework divides federal statutory deadlines into three broad categories, based in large part on the "statutory language, [] the relevant context, and [] what they reveal about the purposes that a time limit is designed to serve." *Id*. First, the Court acknowledged that certain deadlines are "jurisdictional," in the sense that they "prevent[] the court from permitting or taking the action to which the statute attached the deadline. The prohibition is absolute. The parties cannot waive it, nor can a court extend that deadline for equitable reasons." *Id*. *See, e.g., Bowles v. Russell*, 551 U.S. 205, 208–14 (2007) (no equitable relief for defendant who missed appellate filing deadline in reliance on district court's erroneous order). Second, the Court identified procedural "claims-processing" rules that "do not limit a court's jurisdiction, but rather regulate the timing of motions or claims brought before the court. Unless a party points out to the court that another litigant has missed such a deadline, the party forfeits the deadline's protection." *Dolan*, 560 U.S. at 610. And third, the Court characterized some deadlines as "time-related directive[s]" that are "legally enforceable but

9

do[] not deprive a judge or other public official of the power to take the action to which the deadline applies if the deadline is missed." *Id.* at 611.

*Dolan* itself concerned the repercussions of noncompliance with 18 U.S.C. § 3664(d)(5), which provides a deadline for restitution orders in the context of criminal sentencing. The Court held that "a sentencing court that misses the 90-day deadline nonetheless retains the power to order restitution—at least where, as here, the sentencing court made clear prior to the deadline's expiration that it would order restitution . . . ." *Id.* at 608. The Court cited the fact that the rule "does not specify a consequence for noncompliance with its timing provisions," and noted that characterizing the statute as jurisdictional would undermine its remedial purpose, which was to assure that criminal defendants pay restitution to victims. *Id.* at 611–14.

The Government argues that here, like in *Dolan*, (1) the relevant rule fails to specify consequences for noncompliance, and (2) strict enforcement would defeat the purpose of the statute, which is, in the Government's view, "to assure the defendant's proper compliance and accountability through the complete period of supervised release." Gov. Br. at 31. And the Government further suggests that strict construction of the rule would result in "absurd" consequences such as windfalls to defendants who violate the terms of their release immediately prior to its expiration. Gov. Br. at 32–33 (citing *United States v. Brown*, 333 U.S. 18, 27 (1948) ("No rule of construction necessitates our acceptance of an interpretation resulting in patently absurd consequences.")).

10

Section § 3583(i) is noteworthy, however, insofar as it does *not* merely set a deadline—it expressly authorizes a grant of "power" to the district court and conditions the existence of that power on a specific and minimally onerous event. *See Landgraf v. USI Film Prods.*, 511 U.S. 244, 274 (1994) ("[J]urisdictional statutes 'speak to the power of the court rather than to the rights or obligations of the parties.'" (quoting *Republic Nat'l Bank of Miami v. United States*, 506 U.S. 80, 100 (1992) (Thomas, J., concurring))). The plain language of the statute, then, compels the conclusion that the deadline is jurisdictional.[3]

This conclusion is bolstered by the strict application of § 3583(i) by other federal courts. In *United States v. Janvier*, for instance, the district court ordered the issuance of a warrant on the defendant's final day of supervised release, but the warrant was not issued until two days after the expiration of the term. 599 F.3d 204, 265–69 (2d Cir. 2010). The Second Circuit found irrelevant the fact that the Government had made unsuccessful efforts to obtain a warrant within the term. And another district court reached the same outcome on facts nearly identical to those presented here. *See United States v. Hazel*, 106 F. Supp. 2d 14, 14–15 (D.D.C. 2000). There, as here, the district court ordered the issuance of a summons before expiration of supervised release, and defense

---

[3] The Government conceded at oral argument that there is some temporal limitation on a district court's jurisdiction over a supervised release. Specifically, it agreed that a district court would not have authority to conduct revocation proceedings if a revocation petition was not filed until after the expiration of supervised release.

11

counsel discussed a hearing date with the clerk before expiration of supervised release, but the summons was ultimately issued only after the expiration of supervised release.[4]

The Government offers no basis on which to distinguish *Janvier* and *Hazel*, and submits that they were decided incorrectly. Instead, like the District Court, it relies on *United States v. English*, 400 F.3d 273 (5th Cir. 2005). In that case, prior to the expiration of the defendant's supervised release, the district court inadvertently issued a defective warrant bearing the wrong defendant's name. The Fifth Circuit invoked the Supreme Court's admonition in *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990), that equitable tolling is appropriate "in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period." *English*, 400 F.3d at 275. But despite phrasing its holding in terms of equity, the panel ultimately emphasized that "[m]ost importantly, as in *Irwin*, the defective document, along with the petition and the order, were filed before the statutory

---

[4] Many other courts have likewise referred to § 3583(i) as "jurisdictional." *See, e.g.*, *United States v. Juarez-Velasquez*, 763 F.3d 430, 433, 436 (5th Cir. 2014); *United States v. Hacker*, 450 F.3d 808, 814–15 (8th Cir. 2006); *United States v. Ortiz-Hernandez*, 427 F.3d 567, 579–80 (9th Cir. 2004) (per curiam). The same is true of the supervised release cases that predated § 3583(i). *See, e.g.*, *United States v. Morales*, 45 F.3d 693, 696, 701–702 (2d Cir. 1995); *United States v. Barton*, 26 F.3d 490, 491 (4th Cir. 1994); *United States v. Neville*, 985 F.2d 992, 994, 999 (9th Cir. 1993).

period had expired." *Id.* at 276. We thus read *English* as a recognition that even a warrant containing a technical error may satisfy § 3583(i)'s mandate only so long as that warrant is issued prior to the statutory deadline.

Nor are we persuaded by the Government's suggestion that strict application of § 3583(i) will result in routine windfalls to opportunistic criminal defendants. As noted by the Second Circuit in *Janvier,* the Government could have satisfied its minimal burden here in a variety of ways—most notably by seeking a summons earlier, but also by asking the court to issue a summons with a control date, i.e., a date on which the parties briefly appear and agree upon further scheduling. Tellingly, there is no evidence in the record that any governmental actor brought the approaching deadline to the Court's attention at any relevant time. The fact that the Government is a sophisticated and repeat player in these interactions, however, comforts us that the failure to meet the statutory deadline exhibited in this case will be an isolated occurrence.

Finally, we must address the occasional reference in our case law to the notion that a district court's jurisdiction over revocation proceedings stems not only from § 3583(i), but also from the broader grant of jurisdiction in 18 U.S.C. § 3231 over "all offenses against the laws of the United States." *See, e.g.*, *United States v. Williams*, 369 F.3d 250, 252 (3d Cir. 2004) (noting that the district court had jurisdiction over revocation proceedings under § 3231 and "more specifically" under § 3583(i)). On this theory, one might suggest that § 3583(i) imposes a "mandatory but nonjurisdictional" barrier to the exercise of the District Court's power to impose sanctions for a violation of supervised where a warrant or summons is not issued prior to the expiration of release.

13

*Gonzalez v. Thaler*, 132 S. Ct. 641, 656 (2012). Although courts have a duty to enforce a mandatory nonjurisdictional rule when it is properly and timely invoked, application of such rules may be waived, *Eberhart v. United States*, 546 U.S. 12, 17–18 (2005) (per curiam), and they are subject to a rebuttable presumption of equitable tolling, *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 95–96 (1990). For all of the aforementioned reasons, however—including the plain language of the statute, its historical context, and the weight of the case law applying it—we conclude that § 3583(i) is in fact jurisdictional and thus not subject to equitable tolling.

IV.

The Government argues that the District Court's order directing the issuance of a summons, taken in combination with notice to Merlino's counsel, satisfied § 3583(i)'s requirement that "a warrant or summons [be] issued." The United States Code does not define "summons" for purposes of § 3583, although the term is defined elsewhere in the context of federal criminal proceedings. For instance, the Code's general guidelines pertaining to "Arrest and Commitment" direct the reader to Federal Rules of Criminal Procedure 4 and 9. *See* 18 U.S.C. § 3046. Rule 4 states that a summons on a criminal complaint "must be in the same form as a warrant except that it must require the defendant to appear before a magistrate judge at a stated time and place." Fed. R. Crim. P. 4(b)(2). A warrant on a criminal complaint must:

> (A) contain the defendant's name or, if it is unknown, a name or description by which the

14

defendant can be identified with reasonable certainty;

(B) describe the offense charged in the complaint;

(C) command that the defendant be arrested and brought without unnecessary delay before a magistrate judge or, if none is reasonably available, before a state or local judicial officer; and

(D) be signed by a judge.

*Id.* 4(b)(1). Where founded on a criminal indictment or information, both documents must be signed by the clerk. *Id.* 9(b).

Although these definitions lack controlling weight in this context, *see, e.g., United States v. Bernardine*, 237 F.3d 1279, 1281 n.1 (11th Cir. 2001), they reaffirm that a summons traditionally is a document afforded special weight due to its role in the formal initiation of both civil and criminal proceedings. *See, e.g.*, *Black's Law Dictionary* 1665 (10th ed. 2014) (defining summons as a "writ or process commencing the plaintiff's action and requiring the defendant to appear and answer"); *Ballentine's Law Dictionary* 1238 (3d ed. 1969) (defining summons as "original process upon a proper service of which an action is commenced and the defendant therein named brought within the jurisdiction of the court").

To repeat, the Government's position is that the September 2 order directing the issuance of a summons, which was served electronically on counsel, functionally served as a summons: it put Merlino on notice of his obligation to appear, and did so prior to the expiration of the term of supervised release. But crucially, the September 2 order fails to meet even the textbook definition of a summons because it does not "requir[e] the defendant to appear and answer." *Black's Law Dictionary* 1665. Because the order only authorized the issuance of a summons, and did not issue a summons on its own, Merlino would have never been legally "requir[ed] . . . to appear and answer" absent the September 16 summons (which issued only after the expiration of supervised release).

Nor do we find it particularly relevant that Merlino's counsel learned of the revocation proceedings by telephone prior to the statutory deadline because § 3583(i) permits jurisdiction only "if . . . a summons . . . has been issued . . . ." "Issue," in turn, means "[t]o be put forth officially." *Black's Law Dictionary* 960. We cannot conclude that a deputy clerk's informal communication with counsel, even taken in conjunction with the District Court's order that a summons be issued, is the functional equivalent of the "issuance" of a "summons" in this context.[5]

---

[5] The Government attaches great significance to the fact that Merlino was placed on notice of the revocation proceedings prior to the expiration of the statutory deadline. Section 3583(i), however, does not speak in terms of "notice." Instead, it turns on "issu[ance]." To wit, the issuance of a warrant or summons, even if not executed or

16

Moreover, every court to have considered this argument has rejected it. *See Janvier*, 599 F.3d at 268 (order to issue a warrant not sufficient under § 3583(i)); *United States v. Hondras*, 176 F. Supp. 2d 855, 857 (E.D. Wis. 2001) (same); *United States v. Hazel*, 106 F. Supp. 2d 14, 15 (D.D.C. 2000) (order to set a revocation hearing with voluntary appearance not sufficient under § 3583(i)). In particular, we find the Second Circuit's justification for its holding convincing:

> [T]o adopt the government's argument would be to rewrite the statute to say something that it does not say because we or the government think the revised version would be preferable. The language of the statute . . . is simply inconsistent with this approach. The statute states that the extension of jurisdiction occurs when "a warrant or

served upon the releasee prior to the expiration of release, satisfies § 3583(i). S*ee, e.g.*, *United States v. Ramos*, 401 F.3d 111, 116–18 (2d Cir. 2005). In other words, the plain language of § 3583(i) gives no indication that notice plays any role in determining whether the deadline has been satisfied in a given case. By this, of course, we do not mean to overlook the separate and unrelated requirement that any delay between the issuance of a warrant, its eventual execution, and conclusion of the revocation proceedings be "reasonably necessary." 18 U.S.C. § 3583(i).

summons has been issued," clearly referencing the issuance of a warrant as an action that has been perfected. The order of the district court, in contrast, merely *directed* "[t]he [i]ssuance of a [w]arrant," clearly contemplating the issuance of the warrant as an act ordered to occur at some future time. By its own terms, the order does not issue a warrant; it directs someone else to issue one. That order was not carried out until two days later, after the expiration of Janvier's term of supervised release.

*Janvier*, 599 F.3d at 268 (emphasis in original).

Our dissenting colleague, despite agreeing that § 3583(i) is jurisdictional, makes a somewhat different argument from the Government: she contends that "an affirmative act of the court to gather the parties to address the alleged violation of its judgment" may satisfy § 3583(i) where such act was "functionally equivalent to and served the purpose of a summons." Dissent at 4–5. But we are mindful that "statutes conferring jurisdiction on federal courts are to be strictly construed, and doubts resolved against federal jurisdiction." *Boelens v. Redman Homes, Inc.*, 748 F.2d 1058, 1067 (5th Cir. 1984); *F & S Constr. Co. v. Jensen*, 337 F.2d 160, 161 (10th Cir. 1964). Adoption of a "functional equivalence" test here would signal a return to the amorphous jurisdictional practices exemplified by the case law predating § 3583(i). Like the Second Circuit, we are unwilling to

18

"contemplate strained readings that would blur the bright line provided by Congress," particularly "[g]iven the ease with which the statute can be satisfied." *Janvier*, 599 F.3d at 268. In sum, we reject the argument that anything other than the formal issuance of a warrant or summons can satisfy the mandate of § 3583(i).[6]

V.

Because the jurisdictional deadline described in § 3583(i) is not subject to equitable tolling, and because no warrant or summons was issued prior to the expiration of Merlino's term of supervised release on September 6, 2014, we conclude that the District Court lacked subject-matter jurisdicition over Merlino's revocation proceedings. Accordingly, we will vacate the District Court's order of October 24, 2014.

---

[6] Merlino also argues that the evidence presented at the violation hearing was insufficient to support the District Court's conclusion that he "associated with" a convicted felon in violation of the conditions of his supervised release. Because we are vacating the District Court's order on jurisdictional grounds, we will not address this argument.

AMBRO, <u>Circuit Judge</u>, concurring

Does the deadline to issue a warrant or summons under 18 U.S.C. § 3583(i) limit the subject-matter jurisdiction of the district court to revoke supervised release after the end of the supervision period, or does it merely limit the court's remedial power to do so? The great weight of circuit court authority supports the conclusion that the deadline is jurisdictional. Moreover, "statutes conferring jurisdiction on federal courts are to be strictly construed, and doubts resolved against federal jurisdiction." *Boelens v. Redman Homes, Inc.*, 748 F.2d 1058, 1067 (5th Cir. 1984); *F & S Constr. Co. v. Jensen*, 337 F.2d 160, 161 (10th Cir. 1964). It is thus appropriate to reverse the District Court's order revoking Mr. Merlino's supervised release because the September 2, 2014 petition did not satisfy the provision's bright-line requirement that a summons or warrant issue before the end of the supervision period on September 6. In this context, I concur with the result set out in Judge Vanaskie's opinion.

That noted, I write separately to acknowledge countervailing considerations, including recent Supreme Court cases, that raise doubt about whether Congress intended § 3583(i) to be jurisdictional rather than "mandatory but nonjurisdictional." *Gonzalez v. Thaler*, 132 S. Ct. 641, 656 (2012). Like jurisdictional rules, the courts have a duty to enforce a mandatory nonjurisdictional rule when it is properly invoked. *Eberhart v. United States*, 546 U.S. 12, 17–18 (2005) (per curiam). But unlike jurisdictional rules, nonjurisdictional rules are waived if not invoked, *id.*, and are subject to a rebuttable presumption of equitable tolling, *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 95–96 (1990).

The jurisdictional status of § 3583(i) is complicated by our own inconsistency in identifying the source of a district court's subject-matter jurisdiction to revoke supervised

release even in run-of-the-mill cases where revocation occurs *during* the supervision period. We usually cite 18 U.S.C. § 3231, which grants "original jurisdiction . . . [over] all offenses against the laws of the United States." *See, e.g.*, *United States v. Paladino*, 769 F.3d 197, 200 (3d Cir. 2014); *United States v. Thornhill*, 759 F.3d 299, 306 n.8 (3d Cir. 2014); *United States v. Clark*, 726 F.3d 496, 500 (3d Cir. 2013); *United States v. Young*, 634 F.3d 233, 237 (3d Cir. 2011); *United States v. Doe*, 617 F.3d 766, 769 n.3 (3d Cir. 2010); *United States v. Dees*, 467 F.3d 847, 850 (3d Cir. 2006); *see also United States v. Walker*, 742 F.3d 614, 616 (5th Cir. 2014); *United States v. Griffin*, 413 F.3d 806, 807 (8th Cir. 2005); *United States v. Jackson*, 176 F.3d 1175, 1176 (9th Cir. 1999) (per curiam).

In a few cases, however, we have cited both § 3231 and 18 U.S.C. § 3583(e) as the sources of subject-matter jurisdiction to revoke during the supervision period. *See, e.g.*, *United States v. Manuel*, 732 F.3d 283, 290 n.2 (3d Cir. 2014); *United States v. Dillon*, 725 F.3d 362, 365 (3d Cir. 2013); *United States v. Carter*, 730 F.3d 187, 190 n.3 (3d Cir. 2013). It would be strange if § 3583(e) were the source of subject-matter jurisdiction for revocations of supervised release. That provision merely says that the "court may . . . revoke a term of supervised release . . . if the court . . . finds by a preponderance of the evidence that the defendant violated a condition of supervised release." 18 U.S.C. § 3583(e)(3). This appears to "specify[] the remedial power[] of the court" to revoke supervised release rather than grant subject-matter jurisdiction. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 90 (1998) (emphasis omitted).

Section 3231 is the more plausible source of subject-matter jurisdiction for revocations of supervised release generally. It provides a clear grant of "original jurisdiction" in criminal cases. 18 U.S.C. § 3231. That grant includes

2

jurisdiction to impose a sentence, which can contain a period of supervised release. *See, e.g.*, *United States v. Wallace*, 663 F.3d 177, 179 (3d Cir. 2011); *United States v. Charles*, 467 F.3d 828, 830 n.4 (3d Cir. 2006); *United States v. Ricks*, 5 F.3d 48, 49 (3d Cir. 1993) (per curiam); *United States v. Castro-Verdugo*, 750 F.3d 1065, 1068 (9th Cir. 2014); *United States v. Rosales-Garcia*, 667 F.3d 1348, 1350 (10th Cir. 2012). I also read § 3231 to give a court jurisdiction to supervise a defendant on release, to ensure he satisfies the requirements of his sentence, and to revoke supervised release if he fails to do so.

Section 3231 includes no express time limit for its grant of subject-matter jurisdiction. The District Court thus had jurisdiction to revoke Merlino's supervised release unless some other legal rule stripped the Court of its jurisdiction.[1]

---

[1] Other legal rules not relevant here extinguish a district court's subject-matter jurisdiction to vacate a conviction or modify a sentence. For instance, there is a "basic principle of judicial process" that a district court loses jurisdiction to vacate a conviction after the circuit court decides an appeal. *Eberhart*, 546 U.S. at 17. Some circuits have held that Federal Rule of Appellate Procedure 4(b) extinguishes a district court's jurisdiction to vacate a conviction even earlier, when the deadline for filing a notice of appeal has passed. *See, e.g.*, *United States v. Sumner*, 226 F.3d 1005, 1013 (9th Cir. 2000). Similarly, except under limited circumstances, 18 U.S.C. § 3582(c) and Federal Rule of Criminal Procedure 35(a) strip a district court of jurisdiction to modify a sentence 14 days after sentencing. *See United States v. Higgs*, 504 F.3d 456, 463-64 (3d Cir. 2007). None of these rules, however, indicate when a district court loses jurisdiction to revoke supervised release.

As I am unaware of any other legal rule that would do so, the focus is whether § 3583(i) strips the district court of subject-matter jurisdiction to revoke supervised release after its expiration if a summons or warrant was not issued beforehand.

Over the last two decades the Supreme Court has repeatedly admonished lower courts to draw "a stricter distinction between truly jurisdictional rules, which govern a court's adjudicatory authority, and nonjurisdictional . . . rules, which do not." *Thaler*, 132 S. Ct. at 648 (internal quotation marks omitted); *Steel Co.*, 523 U.S at 90. A rule is jurisdictional if there is a "'clear' indication that Congress wanted [it] to be 'jurisdictional.'" *Henderson ex rel. Henderson v. Shinseki*, 131 S. Ct. 1197, 1203 (2011) (quoting *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 515–16 (2006)). It need not use "magic words." *Id.* In ascertaining "clear" intent, we "look[] to [1] statutory language, to [2] the relevant context, and to [3] what they reveal about the purposes that a time limit is designed to serve." *Dolan v. United States*, 560 U.S. 605, 610 (2010). I lay out below what I perceive to be the key arguments for and against reading the deadline under § 3583(i) as a jurisdictional requirement for revocations of supervised release after the end of the supervision period.

A. Statutory Text

Several features of § 3583(i) are relevant to the inquiry. At the outset, its title, "Delayed Revocation," gives no evidence Congress intended the provision to be jurisdictional. *See Shinseki*, 131 S. Ct. at 1205. And the language of the provision expressly "extends" the court's authority rather than curtails it. A grant of authority can impliedly take something away, but it is natural to read § 3583(i) as adding power to the district court—whether it be remedial or jurisdictional—rather than subtracting it.

4

Next, § 3583(i) refers to the "power of the court." This is significant evidence that Congress intended for the provision to be jurisdictional because "power of the court" is commonly associated with "jurisdiction." *See, e.g.*, *Landgraf v. USI Film Prods.*, 511 U.S. 244, 274 (1994) ("[J]urisdictional statutes speak to the power of the court . . . ." (internal quotation marks omitted)); *Steel Co.*, 523 U.S. at 89 ("[S]ubject-matter jurisdiction [is] the courts' statutory or constitutional *power* to adjudicate the case." (emphasis in original)); *United States v. Arredondo*, 31 U.S. 691, 709 (1832) ("The power to hear and determine a cause is jurisdiction . . . ."). But I note that "power of the court" also has non-jurisdictional meanings, including the remedial authority of the court. *See Sioux Honey Ass'n v. Hartford Fire Ins. Co.*, 672 F.3d 1041, 1052 (Fed. Cir. 2012) ("[A] court's power to grant relief is not synonymous with its ability to exercise jurisdiction, as these two concepts are separate and distinct. Power does not necessarily envelop the concept of jurisdiction.").

In the supervised-release context, there are reasons to think that "power of the court" refers to this remedial authority rather than subject-matter jurisdiction. In administering criminal laws, courts frequently use "power of the court" in just this way. *See, e.g.*, *United States v. Cieslowski*, 410 F.3d 353, 360 (7th Cir. 2005) (referring to the "power of the court to depart upward from the Guidelines range"); *United States v. Turner*, 389 F.3d 111, 120 (4th Cir. 2004) (referring to "the power of the court to fix the maximum sentence[]" (quoting *Binkley v. Hunter*, 170 F.2d 848, 849 (10th Cir. 1948)); *United States v. Diaz*, 245 F.3d 294, 301 (3d Cir. 2001) (referring in a parenthetical to the "power of district courts [at sentencing] . . . to consider circumstances not considered by the [U.S.] Sentencing Commission"); *United States v. Waugh*, 207 F.3d 1098, 1101

5

(8th Cir. 2000) (referring to the "power of the Court to impose consecutive sentences").

And in other (admittedly unrelated) contexts, some statutes refer to the court's "power" without appearing to be jurisdictional. *See, e.g.*, 38 U.S.C. § 7253(g)(3) ("The Court shall have the power provided under [28 U.S.C. § 361] to award reimbursement for the reasonable expenses described in that section."); 38 U.S.C. § 7265(a) ("The Court [of Appeals for Veterans Claims] shall have power to punish by fine or imprisonment such contempt of its authority as . . . misbehavior of any person in its presence or so near thereto as to obstruct the administration of justice . . . ."); 12 U.S.C. § 1735f-14(d)(4) ("[T]he court [of appeals] shall have the power to order payment of the penalty imposed by the Secretary [of Housing and Urban Development]."); 42 U.S.C. § 3537a(c)(4)(D) (same).

And though Congress need not use magic words to confer jurisdiction, when it references the court's "power" in provisions that appear to be jurisdictional it frequently also inserts the word "jurisdiction." *See, e.g.*, 50 U.S.C. § 47d(b) ("A determination made by the Attorney General under section 47b of this title shall be final and conclusive and no court shall have power or jurisdiction to review it."); 42 U.S.C. § 2014(j) ("Any determination by the Nuclear Regulatory Commission or the Secretary of Energy, as appropriate, that such an event has, or has not, occurred shall be final and conclusive, and no other official or any court shall have power or jurisdiction to review any such determination."); 42 U.S.C. § 2184 ("No court shall have jurisdiction or power to stay, restrain, or otherwise enjoin the use of any invention or discovery by a patent licensee, to the extent that such use is licensed by section 2183(b) or 2183(e) of this title."); 38 U.S.C. § 7252(a) ("The Court of Appeals for Veterans Claims shall have exclusive jurisdiction to

6

review decisions of the Board of Veterans' Appeals . . . . The Court shall have power to affirm, modify, or reverse a decision of the Board or to remand the matter, as appropriate."); 32 U.S.C. § 326 ("In the National Guard not in Federal service, there are general, special, and summary courts-martial constituted like similar courts of the Army and the Air Force. They have the jurisdiction and powers, except as to punishments, and shall follow the forms and procedures, provided for those courts."); 16 U.S.C. § 820 ("The Attorney General may . . . institute proceedings in equity in the district court . . . for the purpose of revoking for violation of its terms any permit or license issued hereunder . . . . The district courts shall have jurisdiction over all of the above-mentioned proceedings and shall have power to issue and execute all necessary process and to make and enforce all writs, orders and decrees to compel compliance with the lawful orders and regulations of the commission . . . ."). That Congress omitted "jurisdiction" from § 3583(i) may be telling.

Finally, jurisdictional terminology does not necessarily mean Congress intended that a statutory requirement implicate subject-matter jurisdiction and that it be treated as non-waivable and non-tollable. For example, 42 U.S.C. § 11046(c) says that the "district court shall have jurisdiction in actions brought . . . against an owner or operator of a facility to enforce the requirement concerned and to impose any civil penalty provided for violation of that requirement." This provision is not jurisdictional as to subject matter because it merely "specif[ies] the remedial powers of the court." *Steel Co.*, 523 U.S. at 90 (emphasis omitted). The same could be said of § 3583(i) if it extends the remedial "power of the court to revoke a term of supervised release" (and, by implication, punish violations of release conditions).

7

B. Context

We also look to statutory context for evidence of congressional intent. First, the Supreme Court sometimes looks to the location of a provision within a larger statute. *See, e.g., Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 162 (2010); *Shinseki*, 131 S. Ct. at 1205. Subsection 3583(i) is sandwiched in the middle of § 3583, which contains the procedural and substantive rules governing modification and revocation of supervised release. This is not where we typically find jurisdictional provisions. *Shinseki*, 131 S. Ct. at 1205.

Second, legislative history may also shed light on whether Congress intended to treat a provision as jurisdictional. True enough, according to an "Explanation of Provisions" included in the Congressional Record, § 3583(i) "provid[es] continued court jurisdiction to adjudicate alleged supervised release violations and revoke supervised release" after its expiration. 137 Cong. Rec. S7769 (1991). This lends modest support to a jurisdictional reading of § 3583(i). For a statement that was no doubt written by a staff person, that was published in the Congressional Record *three years* before the enactment of § 3583(i), and was never uttered on the Congressional floor, can hardly be strong evidence of legislative intent. Moreover, the statement was published years before the Supreme Court began demanding a stricter distinction between truly jurisdictional and non-jurisdictional rules. It is therefore hard to tell whether the staff person was referring to the court's subject-matter jurisdiction—and intended § 3583(i) to be non-waivable and non-tollable—or merely its remedial authority to revoke supervised release. *See Eberhart*, 546 U.S. at 18 (acknowledging that in the past the Supreme Court "more than occasionally used the term 'jurisdictional' to describe" inflexible but *non*-jurisdictional deadlines); *United States v. Ceballos*, 302 F.3d 679, 692 (7th

8

Cir. 2002) ("[J]udges *and legislators* sometimes use the term jurisdiction to erroneously refer to a court's authority to issue a specific type of remedy[] rather than to the court's subject-matter jurisdiction." (emphasis added)).

Finally, the Supreme Court has considered the historical treatment of similar statutory provisions. For example, 28 U.S.C. § 2107(c) allows district courts to grant a 14-day extension to file a notice of appeal. In *Bowles v. Russell*, the district court granted a 17-day extension, and the notice of appeal was filed 16 days later. 551 U.S. 205, 207 (2007). Relying on a long-standing practice of treating deadlines for filing a notice of appeal as jurisdictional, the Supreme Court held that the court of appeals lacked subject-matter jurisdiction. *Id.* at 209 n.2 ("[I]t is indisputable that time limits for filing a notice of appeal have been treated as jurisdictional in American law for well over a century."). *Bowles* relied on a theory of congressional acquiescence based on "a long line of . . . decisions left undisturbed by Congress." *See Union Pac. v. R.R. v. Bhd. of Locomotive Eng'rs & Trainmen Gen. Comm. of Adjustment*, 558 U.S. 67, 82 (2009); *Thaler*, 132 S. Ct. at 648 n.3; *Shinseki*, 131 S. Ct. at 1203.

The historical treatment of § 3583(i) here differs from *Bowles*. The Supreme Court has never cited § 3583(i), let alone spoken to its jurisdictional status. It has also never cited § 3565(c), the analogous provision for probation. And in contrast with a century's worth of precedent in *Bowles*, § 3583(i) has existed but two decades. *Thaler*, 132 S. Ct. at 648 n.3 ("Congress did not enact the indication requirement [under 28 U.S.C. § 2253(c)(3)] until 1996. There is thus no long line of this Court's decisions left undisturbed by Congress on which to rely." (internal quotation marks omitted)).

9

Myriad lower courts have referred to § 3583(i)[2] and § 3565(c)[3] as implicating jurisdiction, and none of them to my knowledge have questioned that proposition. Yet I am aware of only two published circuit court cases where the jurisdictional label expressly affected the outcome.[4] *See Juarez-Velasquez*, 763 F.3d 430, 433, 436 (5th Cir. 2014) (expressly vacating for lack of jurisdiction a revocation order issued after expiration of supervised release and without a

---

[2] *See, e.g.*, *United States v. Janvier*, 599 F.3d 264, 264 (2d Cir. 2010); *Sczubelek*, 402 F.3d at 180; *United States v. Lominac*, 144 F.3d 308, 310 n.2 (4th Cir. 1998), *abrogated on other grounds by Johnson v. United States*, 529 U.S. 694 (2000); *United States v. Juarez-Velasquez*, 763 F.3d 430, 436 (5th Cir. 2014); *United States v. Madden*, 515 F.3d 601, 608 (6th Cir. 2008); *United States v. Vargas-Amaya*, 389 F.3d 901, 907 (9th Cir. 2004); *United States v. Okoko*, 365 F.3d 962, 964 n.3, 967 (11th Cir. 2004). The same is true of the supervised release cases that predated § 3583(i). *See, e.g.*, *United States v. Morales*, 45 F.3d 693, 696, 701–702 (2d Cir. 1995); *United States v. Barton*, 26 F.3d 490, 491 (4th Cir. 1994); *United States v. Neville*, 985 F.2d 992, 994, 999 (9th Cir. 1993).

[3] *See, e.g.*, *United States v. Crisler*, 501 F.3d 1151, 1152 (10th Cir. 2007).

[4] Two other cases considered the absence of a timely summons or warrant even though the defendant failed to raise the issue in the district court, but this did not affect the outcome of the case because the circuit court concluded the district court did have jurisdiction for reasons not pertinent here. *See United States v. Ortuno-Higareda*, 450 F.3d 406, 409–411 (9th Cir. 2006), *vacated by* 479 F.3d 1153 (9th Cir. 2007); *United States v. Hacker*, 450 F.3d 808, 814 n.4, 816 (8th Cir. 2006).

timely summons or warrant even though the defendant failed to raise the issue in the district court); *United States v. Ortiz-Hernandez*, 427 F.3d 567, 579–80 (9th Cir. 2004) (per curiam) (same). Moreover, no circuit court case referring to § 3583(i) as jurisdictional has provided reasoning or cited Supreme Court cases that admonish a stricter use of the term "jurisdiction." We generally don't afford much weight to drive-by jurisdictional decisions, *Arbaugh*, 546 U.S. at 511, and I believe neither does Congress.

In a capsule, *Bowles*'s theory of congressional acquiescence is likely inapplicable here where there is no Supreme Court precedent interpreting § 3583(i) or any other similar provision; where § 3583(i) is only two-decades old; where so many cases have called the provision jurisdictional yet the outcome of so few cases has been affected by that label; and where not one has explained why it should be jurisdictional.

C. Statutory Purpose

The Supreme Court also looks to statutory purpose to determine whether Congress intended for a provision to be jurisdictional. *Dolan*, 560 U.S. at 610. Obvious purposes of § 3583, which generally governs revocation of supervised release, include protecting society, punishing offenders, and deterring future offenders. A jurisdictional reading of the timing requirement under § 3583(i) would frustrate these purposes by precluding revocations for late-term violations in cases where the Government had no opportunity to obtain a timely warrant or summons. *See Thaler*, 132 S. Ct. at 650.

Congress likely enacted § 3583(i) to balance the need to revoke supervised release for late-term violations with the need to protect defendants from hasty revocation hearings held at the 11th hour. *See United States v. Janvier*, 599 F.3d

11

264, 265-66 (2d Cir. 2010). Treating § 3583(i) as jurisdictional—that is, non-waivable and non-tollable—would serve neither objective here. Statutory purpose thus provides little evidence Congress intended the deadline in § 3583(i) to be jurisdictional.

* * * * *

Ultimately I am swayed that § 3583(i) is jurisdictional by the provision's reference to the "power of the court," by the legislative history (weak as it is) saying the provision grants "jurisdiction," and by the many circuit court cases calling it jurisdictional (though without even questioning whether the label is appropriate). While I concur with the result stated by Judge Vanaskie, I find this to be a close issue and am surprised federal courts have yet to wrestle with it.

SHWARTZ, <u>Circuit Judge</u>, dissenting in part.

I agree with the majority that 18 U.S.C. § 3583(i) is a jurisdictional statute but conclude that the unique facts here satisfy the jurisdictional prerequisites. Thus, I would affirm.

Shortly before Joseph Merlino's term of supervised release was to expire, the U.S. Probation Office filed a petition alleging that he violated conditions of his supervised release that prohibited him from associating with known felons and members of La Cosa Nostra. The District Court promptly sought to schedule a hearing to address the allegations, but the hearing did not occur until after the term of supervised release expired. In such a situation, § 3583(i) governs the District Court's authority.

Section 3583(i) permits a district court to adjudicate violations of supervised release after the supervised release term expires so long as a warrant or summons issues before the term expires. Because there is no assertion here that a warrant issued, I turn to whether a summons issued. Section 3583 does not define "summons." <u>See</u> 18 U.S.C. § 3583(i). Moreover, unlike summonses for complaints and indictments, the Federal Rules of Criminal Procedure do not have a provision that "governs the issuance of a summons or warrant on a petition to revoke supervised release." <u>United States v. Vallee</u>, 677 F.3d 1263, 1265 (9th Cir. 2012); <u>United States v. Bernardine</u>, 237 F.3d 1279, 1281 n.1 (11th Cir. 2001) ("No other rule of criminal procedure, relevant statute or case law supports the application of Rules 4 or 9 in the context of a supervised release violation hearing where the court already has supervisory jurisdiction and authority over the defendant."). Thus, we must look elsewhere for guidance.

Black's Law Dictionary defines "summons" as "[a] writ or process commencing the plaintiff's action and requiring the defendant to appear and answer." Black's Law Dictionary 1665 (10th ed. 2014). The definition does not require a specific document, format, or label. Thus, the absence of a written document here does not preclude a finding that the District Court satisfied § 3583(i)'s jurisdictional prerequisites. To determine what constitutes a summons in this context, we must therefore ascertain the goal Congress sought to achieve in adopting the summons requirement.

In enacting § 3583(i), Congress changed the triggering event for the court's jurisdiction from the filing of a petition to the issuance of a warrant or summons. See United States v. Janvier, 599 F.3d 264, 267 (2d Cir. 2010). This choice demonstrates that mere notification to the defendant of the alleged violation—an object achieved by the U.S. Probation Office's petition—is insufficient to confer subject matter jurisdiction. Instead, Congress required district courts to respond to the petition and affirmatively indicate to the defendant its intent to adjudicate the alleged violation of supervised release. It is thus the district court's affirmative invocation of its jurisdiction before the term of supervised release expires that operates to extend its authority.

Here, the District Court clearly and affirmatively demonstrated to Merlino its intent to adjudicate his alleged violation and thus extended its revocation authority. Acting through its Deputy Clerk, the District Court directed the parties to appear for a hearing and, as a courtesy, inquired of counsel as to their availability. But for defense counsel's request to delay setting an exact date, written notice would

2

have issued before the supervised release term expired. The fact that a formal written document embodying the hearing date was not transmitted before the period expired does not change the fact that the District Court affirmatively acted during the period of supervised release to invoke its authority to adjudicate the violation and only delayed issuing a written document because defense counsel asked it to delay selecting a date.

Allowing defense counsel to play a role in selecting the date ensured that Merlino's right to counsel of choice was respected. Merlino wanted a particular attorney to appear at the hearing and obviously was willing to wait until he was available. The District Court, having already taken affirmative action to exercise its authority before the end of Merlino's supervised release term, merely delayed selecting a specific date and memorializing it in writing to ensure Merlino's counsel of choice was available. It would be an odd result to deprive the District Court of the power to address a violation of its judgment where it invoked its authority to convene a prompt hearing to address the violation and only delayed selecting a specific date to enable Merlino's counsel of choice to appear.

Moreover, the District Court's actions furthered Congress's goal of ensuring prompt adjudication of violations of supervised release. By requiring court action during the period of supervised release in the form of commencing the process of convening a hearing, Congress ensured that petitions did not languish and only required an alleged violator to address them when the District Court acted during the supervised release period to convene a proceeding. The events here, where the District Court affirmatively

3

demonstrated its intent to hold a hearing and took steps to set a hearing date during the period of supervised release, fulfill the purpose of the statute and thus satisfy the jurisdictional prerequisites.

Finally, this reading of the word "summons" as used in § 3583(i) is also consistent with the nature of the relationship between the court and a defendant on supervised release. Defendants on supervised release have previously appeared in court and are subject to a judgment of the court and its requirements concerning their conduct while on supervised release. Defendants who appear in court as a result of a summons issued in connection with complaints and indictments, on the other hand, have no pre-existing relationship with the court. Greater formality in summonses issued to these defendants makes clear to them their obligation to appear—a formality not needed in the supervised release context. A more informal summons requirement for supervised release violations is also consistent with the fact that violations of supervised release are adjudicated based upon a lesser standard of proof and are decided by a judge and not a jury. United States v. Dees, 467 F.3d 847, 854-55 (3d Cir. 2006). Thus, reading the word "summons" in the context in which it is used and remaining mindful of the purpose it serves further bolsters a reading that the word "summons" here contemplates an affirmative act of the court to gather the parties to address the alleged violation of its judgment.

In short, § 3583(i)'s jurisdictional prerequisites were satisfied. Although a written document embodying the agreed-upon hearing date did not issue before the expiration of the term, other events occurred that were functionally

4

equivalent to and served the purpose of a summons. Thus, the District Court had jurisdiction to conduct a hearing to determine whether Merlino violated the conditions of his supervised release. Because the evidence adduced at that hearing supported the District Court's conclusion that Merlino violated the associational restrictions embodied in the conditions of his supervised release, the District Court did not abuse its discretion in ordering revocation.

For these reasons, I would affirm the judgment of the District Court and respectfully dissent in part from the majority opinion.