# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

November 2, 2020

Lyle W. Cayce
Clerk

No. 20-40122

United States of America,

*Plaintiff—Appellee*,

*versus*

Alex Antonio Cartagena-Lopez, *also known as* Alex Cartagena-Lopez,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 5:13-CR-494-1

Before Dennis, Higginson, and Willett, *Circuit Judges*.

Don R. Willett, *Circuit Judge*:

After being released from prison, Alex Antonio Cartagena-Lopez was supposed to report to the probation office to begin a term of supervised release. But instead of checking in, Cartagena-Lopez skipped out. He was found living under an assumed name over three and a half years later. By then, the scheduled end date of his supervised release had come and gone. The district court nonetheless revoked his supervision, sending him back to jail, in part based on violations that occurred after his supervised release expired. This appeal asks whether Cartagena-Lopez's status as a fugitive

No. 20-40122

tolled his period of supervision, an issue of first impression in this Circuit. We hold that the fugitive tolling doctrine applies to supervised release and therefore affirm the revocation of Cartagena-Lopez's supervision. In doing so, we join the Second, Third, Fourth, and Ninth Circuits, which have adopted the doctrine,[1] and part ways with the First.[2]

I

Cartagena-Lopez was sentenced to 24 months in prison followed by three years of supervised release after pleading guilty to illegal reentry in violation of 8 U.S.C. § 1326. On November 25, 2015, he completed his prison term and was released from federal custody to the Bexar County Jail for proceedings in a pending state case. He was released from Bexar County's custody into the community on December 18, 2015.

Cartagena-Lopez's three-year supervised release term began on November 25, 2015, upon his release from federal custody.[3] It was therefore scheduled to end on November 25, 2018. While on supervised release, Cartagena-Lopez was subject to various conditions, including that he report to the probation office within 72 hours of release and that he not commit another federal, state, or local, crime. Failure to abide by those conditions could result in additional prison time.[4]

On February 12, 2016, the probation office filed a petition to revoke Cartagena-Lopez's supervised release, alleging that he failed to report

---

[1] *United States v. Barinas*, 865 F.3d 99 (2d Cir. 2017); *United States v. Island*, 916 F.3d 249 (3d Cir. 2019), *cert. denied*, 140 S. Ct. 405 (2019); *United States v. Buchanan*, 638 F.3d 448 (4th Cir. 2011); *United States v. Murguia-Oliveros*, 421 F.3d 951 (9th Cir. 2005).

[2] *United States v. Hernandez-Ferrer*, 599 F.3d 63 (1st Cir. 2010).

[3] *See* 18 U.S.C. § 3624(e).

[4] 18 U.S.C. § 3583(e)(3).

No. 20-40122

within 72 hours of his release from the Bexar County Jail in December 2015. An arrest warrant was issued the same day. However, Cartagena-Lopez's whereabouts were unknown until October 19, 2019, when San Antonio police arrested him for public intoxication and failing to identify himself while he was a fugitive from justice. Cartagena-Lopez had apparently been living under the assumed name Juan Carlos Gomez Varias. He was taken into federal custody under the three-and-a-half-year-old warrant on October 22, 2019.

On December 10, 2019, the probation office supplemented its February 12, 2016 petition, adding allegations that Cartagena-Lopez violated his supervised release in October 2019 by committing the state offenses of public intoxication and failure to identify. On February 4, 2020, Cartagena-Lopez admitted to all three violations—failure to report, public intoxication, and failure to identify—and was sentenced to 12 months in prison. Cartagena-Lopez timely appealed.

II

Cartagena-Lopez argues that because his supervised release term ended in November 2018, the district court lacked jurisdiction over violations that occurred in October 2019.[5] The Government responds that Cartagena-Lopez's supervision was tolled while he was a fugitive. We have applied the fugitive tolling doctrine to defendants who escaped from prison and absconded from probation, but we have yet to consider it in the context of

---

[5] Cartagena-Lopez does not challenge the district court's authority over his December 2015 failure to report to the probation office, as alleged in the February 2016 petition.

No. 20-40122

supervised release.[6] The issue was presented in *United States v. Standefer*, but we did not reach it because we concluded the defendant in that case was not a fugitive.[7] Here, Cartagena-Lopez does not challenge the district court's finding that he was a fugitive. The sole question before us, then, is whether his status as a fugitive tolled his term of supervised release. Because this is a question of the district court's jurisdiction, our review is de novo, even though Cartagena-Lopez failed to raise the issue below.[8]

Supervised release is "a form of postconfinement monitoring" implemented by the Sentencing Reform Act of 1984 to replace most forms of parole in the federal criminal justice system.[9] Because supervised release was "invented by the Congress," our inquiry begins with the text of the relevant statutes.[10] To be sure, the statutes governing supervised release do not address the possibility that a defendant will abscond from supervision.[11] But, as other courts to consider the question have done, we look for guidance in two provisions that concern a supervised release term's duration.

First, we consider whether 18 U.S.C. § 3583(i) forecloses the fugitive tolling doctrine, as some have contended.[12] Under § 3583(i), a court's power

---

[6] *Phillips v. Dutton*, 378 F.2d 898 (5th Cir. 1967) (per curiam); *Theriault v. Peek*, 406 F.2d 117 (5th Cir. 1968) (per curiam); *United States v. Fisher*, 895 F.2d 208, 212 (5th Cir. 1990).

[7] 77 F.3d 479 (5th Cir. 1996) (unpublished).

[8] *United States v. Juarez-Velasquez*, 763 F.3d 430, 433 (5th Cir. 2014).

[9] *Johnson v. United States*, 529 U.S. 694, 696–97 (2000) (citing Sentencing Reform Act of 1984, Pub. L. No. 98-473, § 212(a)(2), 98 Stat. 1837, 1999).

[10] *Gozlon-Peretz v. United States*, 498 U.S. 395, 407 (1991).

[11] *Island*, 916 F.3d at 253; *Buchanan*, 638 F.3d at 452.

[12] *See Island*, 916 F.3d at 257 (Rendell, J., dissenting).

to revoke a term of supervised release "extends beyond the expiration of the term of supervised release for any period reasonably necessary for the adjudication of matters arising before its expiration if, before its expiration, a warrant or summons has been issued on the basis of an allegation of such a violation." In other words, a court can hold a revocation hearing within a reasonable time after the supervised release term ends as long as the petition was filed while the defendant was still on supervision. Though we have described § 3583(i) as "a tolling provision," it does not actually extend the end date of the defendant's supervised release term.[13] Rather, it extends the district court's power to revoke a defendant's supervised release based on conduct that occurred during the period of supervision.[14] The statute is silent when it comes to calculating the end date of a supervised released term and it does not address whether and when a term can be tolled. We therefore disagree that § 3583(i) bars the fugitive tolling doctrine. The statute simply provides no guidance here.[15]

Second, we consider § 3624(e). Under § 3624(e), a term of supervised release "commences on the day the person is released from imprisonment

---

[13] *United States v. English*, 400 F.3d 273, 275 (5th Cir. 2005).

[14] *See United States v. Naranjo*, 259 F.3d 379, 383 (5th Cir. 2001) (interpreting § 3583(i) to allow an amended petition to raise new allegations after a term of supervised release ends provided that the original petition was filed, and the newly alleged violations occurred, during the period of supervision).

[15] *See Barinas*, 865 F.3d at 107 ("While § 3583(i) allows the court, as indicated above, a reasonable time beyond the expiration of the supervised-release period where needed to adjudicate charges that a defendant has violated a condition of his supervised release during the supervised-release period, the statutory provisions do not address the court's authority to adjudicate a charge that the defendant absconded during the supervised-release period and while a fugitive committed a prohibited act after the scheduled end of the period.")

No. 20-40122

and runs concurrently with any Federal, State, or local term of probation or supervised release or parole for another offense to which the person is subject or becomes subject during the term of supervised release." However, "[a] term of supervised release does not run during any period in which the person is imprisoned in connection with a conviction for a Federal, State, or local crime unless the imprisonment is for a period of less than 30 consecutive days."[16] So, the supervised release clock continues ticking if the defendant serves another noncustodial sentence or a prison sentence of less than 30 days. But the period of supervision is tolled when the defendant is imprisoned for 30 or more days in connection with a conviction. Because Cartagena-Lopez was only incarcerated in the Bexar County Jail for 23 days, his supervision was not tolled under § 3624(e).

The First Circuit relied on § 3624(e)'s tolling provision to reject the fugitive tolling doctrine.[17] Applying the interpretive canon *expressio unius est exclusion alterius* ("the expression of one thing implies the exclusion of another"), the court reasoned that by expressly providing for tolling during specified periods of imprisonment, Congress foreclosed tolling in other circumstances.[18] Cartagena-Lopez urges us to adopt this interpretation of § 3624(e). "But the *expressio unius* canon is not meant to be mechanically applied."[19] Commentators "emphasize that it must be applied with great

---

[16] 18 U.S.C. § 3624(e). Not relevant here, the statute also addresses how defendants should pay their fines after they are released from prison.

[17] *Hernandez-Ferrer*, 599 F.3d at 67–68.

[18] *Id.*

[19] *In re Bourgeois*, 902 F.3d 446, 447 (5th Cir. 2018).

caution, since its application depends so much on context."[20] And the Supreme Court has instructed that the "canon does not apply 'unless it is fair to suppose that Congress considered the unnamed possibility and meant to say no to it.'"[21] That turns on two inquiries: (1) Whether the statutory text communicates exclusivity, and (2) whether the included term goes hand in hand with the missing term, allowing the inference that the omission has interpretive force.[22] Without these clues, we cannot discern any meaning from statutory omissions.

Here, context persuades us that § 3624(e) does not preempt the fugitive tolling doctrine. Importantly, § 3624(e) is not a standalone tolling provision. As discussed above, the relevant provisions explain how supervised release is affected if the defendant is serving a sentence for another offense: Noncustodial sentences and prison sentences under 30 days have no impact, while longer prison sentences toll the supervised release term. Reading § 3624(e) to broadly foreclose tolling in other circumstances ignores that the statute is not about tolling per se. Rather, it governs how contemporaneous sentences interact with supervised release and, in doing so, employs a tolling provision. Congress's use of tolling as a means, not an end, undermines the First Circuit's interpretation that § 3624(e) is an exclusive tolling provision. In any event, serving time as a prisoner is not so closely associated with being a fugitive that enumerating a tolling provision

---

[20] Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 107 (2012).

[21] *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 381 (2013) (quoting *Barnhart v. Peabody Coal Co.*, 537 U.S. 149, 168 (2003)).

[22] *Barnhart*, 537 U.S. 168–69 (citing *Chevron U.S.A. Inc. v. Echazabal*, 536 U.S. 73, 81 (2002)).

No. 20-40122

for one necessarily implies the exclusion of tolling for the other.[23] At bottom, *expressio unius* does not apply to this case.[24]

But this does not end the inquiry. We still need evidence that the fugitive tolling doctrine is authorized under the supervised release statutes. For that, we must expand our contextual viewfinder. By the time § 3624(e) was enacted as part of the Sentencing Reform Act of 1984, the principle that defendants should not benefit from their own wrongdoing was widely recognized. In 1923, the Supreme Court explained that prisoners could not get credit on their sentence when they escaped from prison or absconded from parole, citing cases from 1869 and 1905.[25] And in 1967, we treated as obvious the proposition that a defendant's "sentence was tolled by his escape and the time of his imprisonment did not again begin to run until his return."[26] In interpreting statutes, we presume that Congress is aware of the common law and does not undertake to change it lightly.[27] Implied changes are disfavored.[28] While the Sentencing Reform Act "eliminated most forms of parole in favor of supervised release," the two systems are similar "in

---

[23] *See id.*; *Marx*, 568 U.S. at 381.

[24] *Chevron U.S.A. Inc.*, 536 U.S. at 80 ("The rule is fine when it applies, but this case joins some others in showing when it does not.").

[25] *Anderson v. Corral*, 263 U.S. 193, 196 (1923) (citing *Dolan's Case*, 101 Mass. 219, 222 (1869) and *In re Moebus*, 62 A. 170 (N.H. 1905)).

[26] *Phillips*, 378 F.2d at 898.

[27] Scalia & Garner, *supra* note 20; *Baker Botts L.L.P. v. ASARCO LLC*, 576 U.S. 121, 126 (2015) ("Statutes which invade the common law are to be read with a presumption favoring the retention of long-established and familiar legal principles." (cleaned up)).

[28] Scalia & Garner, *supra* note 20.

essential respects."[29] The Act did not render the common law of parole obsolete, nor did it alter the longstanding rule that defendants cannot benefit from their own wrongdoing. The fugitive tolling doctrine, which implements that longstanding rule, is thus textually permissible and appropriately applied in the context of supervised release.[30]

The First Circuit reads § 3624(e) as replacing the common law rule with a narrower statutory version that defendants cannot run down the clock on their supervised release while serving a prison sentence on other charges. But the tolling provision in § 3624(e) is better read as a qualification of the general rule, rather than an abrogation of it. Indeed, allowing defendants to get credit toward their supervised release while imprisoned for another crime advantages further criminal conduct. Nothing about § 3624(e), or any of the other statutes governing supervised release, conflicts with the general rule that defendants cannot benefit from their own wrongdoing, or its application via the fugitive tolling doctrine.

To the contrary, the fugitive tolling doctrine furthers the purposes of supervised release. While a statute's text is supreme, its purpose can inform "which of various textually permissible meanings should be adopted."[31] Supervised release aims to rehabilitate defendants and reduce recidivism by easing the transition from prison to the community.[32] These benefits are only

---

[29] *Buchanan*, 638 F.3d at 451 (citation omitted).

[30] *Barinas*, 865 F.3d at 108; *Island*, 916 F.3d at 253–57; *Buchanan*, 638 F.3d at 453, 455; *Murguia-Oliveros*, 421 F.3d at 953.

[31] Scalia & Garner, *supra* note 20 (emphasis omitted).

[32] *United States v. Jackson*, 426 F.3d 301, 305 (5th Cir. 2001).

No. 20-40122

realized if defendants are subject to supervision.[33] As the four circuits to adopt it so far recognize, by ensuring that defendants participate in their supervision, the fugitive tolling doctrine protects the statutory scheme of post-confinement monitoring that Congress established in the Sentencing Reform Act.[34]

## III

For these reasons, we join the Second, Third, Fourth, and Ninth Circuits in adopting the fugitive tolling doctrine in the context of supervised release. We therefore AFFIRM the revocation of Cartagena-Lopez's supervised release.

---

[33] *See id.* ("Shortening the period of supervised release reduces the amount of time a former prisoner is monitored by the system and undermines the rehabilitative goals Congress pursued in enacting § 3624.")

[34] *Barinas*, 865 F.3d at 109 (fugitive tolling doctrine "is consistent with Congress's sentencing scheme of supervision to facilitate the defendant's transition to a law-abiding life in free society"); *Island*, 916 F.3d at 253 ("A supervising court cannot offer postconfinement assistance or ensure compliance with the terms of release while a defendant is truant."); *Buchanan*, 638 F.3d at 455 (failing to apply the fugitive tolling doctrine would "thwart congressional intent"); *Murguia-Oliveros*, 421 F.3d at 954 (fugitive tolling doctrine "is necessary to the purpose of supervised release").