# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

May 15, 2025

Lyle W. Cayce
Clerk

————————

No. 24-10172

————————

United States of America,

*Plaintiff—Appellee*,

*versus*

Wesley Swick,

*Defendant—Appellant*.

———————————————————————

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 7:09-CR-16-1

———————————————————————

Before Wiener, Stewart, and Southwick, *Circuit Judges*.
Leslie H. Southwick, *Circuit Judge*:

Nearly sixteen years ago, Wesley Swick pled guilty to possessing a stolen firearm in violation of 18 U.S.C. § 922(j). He was sentenced to 33 months in prison, to run concurrently with longer state sentences, and two years of supervised release. Eight years later he was released from state prison but did not report to federal supervision as required by the conditions of his supervised release. Swick's failure to report was not noticed until after his supervised release should have ended. The district court revoked his supervised release based on crimes he committed while at large, asserting jurisdiction based on what has been called fugitive tolling. We conclude that

fugitive tolling applies to supervised release, and there was adequate evidence to support revocation. We AFFIRM.

## FACTUAL AND PROCEDURAL BACKGROUND

In 2009, Wesley Swick pled guilty in the United States District Court for the Northern District of Texas, Wichita Falls Division, to possessing a stolen firearm in violation of 18 U.S.C. § 922(j). The district court sentenced him to 33 months in prison, to run concurrently with longer state sentences, and two years of supervised release. One of the conditions of Swick's supervised release required him to report to probation within 72 hours of his release from prison. Swick was released from state prison to mandatory state supervision on September 29, 2017, and he successfully completed that supervision on April 2, 2018. He did not, however, report to federal probation within 72 hours of his release on September 29, 2017, when the parties agree his federal supervised release began. 18 U.S.C. § 3624(e). Even so, the Government did not immediately notice, and so our story continues.

Over the next five years, Swick stayed in Wichita Falls and committed a slew of state crimes. Although other charges were dismissed, Swick was convicted on December 4, 2018, for associating with known gang members in violation of a court order, and again on September 13, 2019, for felony theft and evading arrest with a vehicle. Swick spent just under three years in state prison for these offenses — 34 days for the 2018 convictions and 1,045 days for the 2019 convictions.[1] He was released from state prison on parole on May 31, 2022, and he successfully completed his parole on July 21, 2022. Swick's time in state prison tolled the end of his supervised release by around 1,079 days. *See* 18 U.S.C. § 3624(e). As a result, his supervised release,

---

[1] Although Swick was sentenced to three years in prison for the 2019 offenses, with good time credit dating back to July 22, 2019, he was paroled on May 31, 2022.

which originally would have ended on September 29, 2019, instead should have ended sometime around September 12, 2022, absent other forms of tolling.

A few days later, on September 15, 2022, Swick was arrested by Wichita Falls police for possessing a firearm as a convicted felon and for possessing a controlled substance. On December 21, 2022, while Swick was still in state custody, the Government filed a criminal complaint in the United States District Court for the Northern District of Texas, Wichita Falls Division, alleging that Swick possessed a firearm as a convicted felon in violation of 18 U.S.C. § 922(g)(1). On September 5, 2023, Swick was transferred into federal custody, and the state charges were dismissed. The Government indicted him on October 12, 2023. Swick later pled guilty to that charge and was sentenced to 63 months in prison, to run consecutively with the sentence in this case. That conviction and sentence have been affirmed on appeal.[2] *United States v. Swick*, No. 24-10167, 2025 WL 619165, at *1 (5th Cir. Feb. 26, 2025).

It was only in September 2023, during Swick's federal pretrial bond investigation in the felon-in-possession case, that the probation office realized Swick had never reported to probation as required by the terms of

---

[2] A colorable argument could be made that the entire period from September 15, 2022, onwards may have tolled the end of Swick's supervised release. *See* 18 U.S.C. § 3624(e); *Mont v. United States*, 587 U.S. 514, 521 (2019) (holding "that pretrial detention later credited as time served for a new conviction . . . tolls the supervised-release term under § 3624(e)"). At oral argument, the Government alluded to this possibility, noting that Swick was credited for the time he spent in state and federal custody from September 15, 2022, until his sentencing on February 16, 2024. Granted, it is unclear if the time Swick spent in state custody before a related federal charge was filed would count. We do not need to answer that question because even if Swick's time in state custody counts, his custody could not have tolled the end of his supervised release without fugitive tolling because his term of supervised release would have already expired a few days before his arrest.

his supervised release.  On November 1, 2023, the probation office notified the court of Swick's violations.  Considering Swick's then-pending charge and the likelihood that his term of supervised release had expired before his September 15, 2022 arrest, the probation office recommended that Swick be discharged from his supervised release.  The district court directed the probation office to request a warrant, and a warrant was issued on November 29, 2023.  The revocation petition noted that Swick's unlawful possession of a firearm required his supervised release to be revoked, but the probation office maintained its stance that Swick's supervised release likely expired before his arrest.

Before his revocation hearing, Swick filed a motion arguing that the district court had no jurisdiction to revoke his supervised release because his term of supervised release expired well before the warrant issued.  Relying on a withdrawn opinion from this court, the Government responded that the end of Swick's supervised release had been tolled ever since Swick failed to report to probation within 72 hours of his release from state prison on September 29, 2017.  *United States v. Cartagena-Lopez*, 979 F.3d 356 (5th Cir. 2020), *vacated as moot*, 2020 WL 13837259 (5th Cir. Nov. 19, 2020).[3]  In other words, the Government relied on what has become known as the "fugitive tolling doctrine" to extend or toll Swick's supervised release.

The district court agreed with the Government and found that Swick's failure to report to probation tolled the end of his supervised release.  Like the Government, the district court relied on our withdrawn opinion in

---

[3] *Cartagena-Lopez* became moot exactly two weeks before this court issued the opinion.  Once this court learned of that fact, the opinion was withdrawn as moot. *Cartagena-Lopez*, 2020 WL 13837259, at *1.  As a result, *Cartagena-Lopez* has no precedential value, although we may consider it as persuasive authority. *Henderson v. Fort Worth Indep. Sch. Dist.*, 584 F.2d 115, 116 (5th Cir. 1978) (*en banc*) (mem.).

*Cartagena-Lopez* to conclude that fugitive tolling applies in the supervised release context. Although no evidence other than the revocation petition was introduced, the district court noted that "[t]he judgment documents in this case specifically instructed [Swick] to report within 72 hours of his release to a supervised release officer to begin a term of supervision." The district court inferred intent to evade from Swick's knowledge and failure to report. In doing so, it rejected Swick's argument that he mistakenly thought his term of supervised release expired while he was in state prison.

Assured of its jurisdiction, the district court revoked Swick's supervised release, sentencing him to 24 months in prison, to run consecutively with the sentence on his felon-in-possession charge. Swick timely appealed.

## DISCUSSION

Swick raises two arguments on appeal. First, he argues that fugitive tolling does not apply in the supervised release context. Because the first argument challenges the district court's jurisdiction, we review it *de novo*. *United States v. Juarez-Velasquez*, 763 F.3d 430, 433 (5th Cir. 2014). Second, he argues that even if fugitive tolling does apply, the district court clearly erred in finding him a fugitive. We address the two arguments in that order.

### I.    *Fugitive Tolling*

We begin by explaining there is currently a four-to-two circuit split on whether fugitive tolling exists in the supervised release context: the Second, Third, Fourth, and Ninth Circuits hold that it does; the First and Eleventh Circuits hold that it does not. *Compare United States v. Barinas*, 865 F.3d 99, 107–10 (2d Cir. 2017), *United States v. Island*, 916 F.3d 249, 252–56 (3d Cir. 2019), *United States v. Buchanan*, 638 F.3d 448, 451–58 (4th Cir. 2011), *and United States v. Murguia-Oliveros*, 421 F.3d 951, 953–55 (9th Cir. 2005), *with*

*United States v. Hernandez-Ferrer*, 599 F.3d 63, 67–69 (1st Cir. 2010), *and United States v. Talley*, 83 F.4th 1296, 1300–05 (11th Cir. 2023).

For only a moment, this court was in the cohort containing the circuit majority. *Cartagena-Lopez*, 979 F.3d at 360–63, *vacated as moot*, 2020 WL 13837259. Though that opinion is not precedent, it is entitled to considerable weight for being the briefly published conclusions of colleagues. In that decision, the panel found that fugitive tolling applied in the supervised release context. First, it held that the delayed revocation provision in Section 3583(i) does not bar fugitive tolling because by its very terms, the subsection assumes the end of supervised release. *Id.* at 360–61; 18 U.S.C. § 3583(i). Second, the panel concluded that Section 3624(e), which tolls the end of supervised release during custodial sentences longer than 30 days, does not purport to exhaust the applicable methods of tolling. *Cartagena-Lopez*, 979 F.3d at 361–63; § 3624(e). The panel thus held that the negative implication had limited force, such that Section 3624(e) does not bar fugitive tolling. *Cartagena-Lopez*, 979 F.3d at 362. Third, the panel considered there to be a long-standing common-law tradition of fugitive tolling, and it presumed that Congress would not eliminate that tradition silently. *Id.* at 362–63. Because Congress did not clearly dispose of fugitive tolling in the Sentencing Reform Act of 1984, and because the purpose of supervised release is served by allowing fugitive tolling, the panel held that fugitive tolling exists in the supervised release context. *Id.* at 363.

We generally agree with our colleagues on the first two points and see no need to elaborate on them further. Instead, we consider the additional arguments made here. Swick argues (1) that Congress intentionally abandoned fugitive tolling by not carrying forward a fugitive tolling provision that was in the pre-1984 parole statutes and (2) that the common-law tradition of fugitive tolling in the pre-1984 probation and parole statutes is of

6

No. 24-10172

little relevance in determining whether there is fugitive tolling in the distinct context of supervised release. We will address those arguments in that order.

### A.    The Pre-1984 Parole Statutes

Swick insists on the importance of the fact that in 1976, Congress adopted a comprehensive set of statutes for parole that contained provisions for tolling while a parolee was either a fugitive or was in custody on other sentences, and then when replacing parole with supervised release in 1984, Congress provided only for custodial tolling. To understand the argument, we start with the relevant 1976 parole provisions:

> (b) Except as otherwise provided in this section, the jurisdiction of the [Parole] Commission over the parolee shall terminate no later than the date of the expiration of the maximum term or terms for which he was sentenced, except that —
>
> > . . .
> >
> > (2) in the case of a parolee who has been convicted of a Federal, State, or local crime committed subsequent to his release on parole, and such crime is punishable by a term of imprisonment, detention or incarceration in any penal facility, the Commission shall determine, in accordance with the provisions of section 4214(b) or (c), whether all or any part of the unexpired term being served at the time of parole shall run concurrently or consecutively with the sentence imposed for the new offense, but in no case shall such service together with such time as the parolee has previously served in connection with the offense for which he was paroled, be longer than the maximum term for which he was sentenced in connection with such offense.
>
> (c) In the case of any parolee found to have intentionally refused or failed to respond to any reasonable request, order,

7

summons, or warrant of the Commission or any member or agent thereof, the jurisdiction of the Commission may be extended for the period during which the parolee so refused or failed to respond.

18 U.S.C. § 4210(b)(2), (c) (1982), *repealed by* Sentencing Reform Act of 1984, Pub. L. No. 98-473, tit. II, ch. 2, § 218(a)(5), 98 Stat. 1987, 2027.

Paragraph (b)(2) tolled the end of parole during custodial sentences, and subsection (c) is fairly read as authorizing something akin to fugitive tolling, as one circuit court opinion and a congressional conference report recognized.[4] *See Barrier v. Beaver*, 712 F.2d 231, 236–38 (6th Cir. 1983) (reading subsection (c) as tolling parole when a parolee absconds from supervision); H.R. REP. NO. 94-838, at 32 (1976) (Conf. Rep.) (explaining that subsection (c) applies to "an absconder or [a parolee] who has refused or failed to respond to any reasonable request, order, summons, or warrant of the Commission"). We acknowledge, though, that Section 4210(c) is far broader than just fugitive tolling, and indeed, might primarily be seen as a provision extending parole for all refusals to comply with directives until a compliance is achieved.

Just eight years later, Congress replaced the parole system with supervised release as part of a new, more determinate sentencing scheme. *Johnson v. United States*, 529 U.S. 694, 696–97, 710–11 (2000); Sentencing Reform Act of 1984, §§ 212(a)(2), 218(a)(5), 98 Stat. at 1999–2003, 2009, 2027. The new supervised release statutes explicitly provided for tolling

---

[4] There are relatively few cases interpreting Section 4210(c), perhaps because it was only in force between 1976 and 1984. *See* Parole Commission and Reorganization Act, Pub. L. No. 94-233, § 2, 90 Stat. 219, 226–27 (1976); Sentencing Reform Act of 1984, § 218(a)(5), 98 Stat. at 2027 (repealing the 1976 parole statutes). The pre-1976 parole statutes had no explicit fugitive tolling provision. *See* Act of June 25, 1910, Pub. L. No. 61-269, 36 Stat. 819, 819–21; Act of June 25, 1948, Pub. L. No. 80-772, 62 Stat. 683, 854–55.

during custodial sentences as in the 1976 statute but had no provision for fugitive tolling. Sentencing Reform Act of 1984, § 212(a)(2), 98 Stat. at 2009 (codified as amended at 18 U.S.C. § 3624(e)). Swick argues that this omission was a deliberate choice, and such choices give meaning to what is enacted. *See* Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 256 (2012). This analysis relies on *statutory* history, *i.e.*, the changes in statutes actually enacted. *Id.*

A few points undermine Swick's effort to apply those principles. We already mentioned that Section 4210(c) may not have been primarily aimed at fugitive tolling. For example, if the Parole Commission ordered the parolee to pay restitution, parole could be tolled during the period in which the parolee willfully failed to pay restitution, even if the parolee was in no way a fugitive. *See Hutchings v. United States Parole Comm'n*, 201 F.3d 1006, 1009–10 (8th Cir. 2000). The parole provision required a "reasonable request, order, summons, or warrant" before a refusal to respond could toll the end of parole. § 4210(c) (1982); *Barrier*, 712 F.2d at 235–36. The fugitive tolling that is at issue in this appeal applies as soon as the person absconds from supervision, regardless of any warrant or summons. In summary, Section 4210(c) is not clear statutory approval of the form of tolling being argued for here. As a result, its later omission does not amount to a clear repudiation of fugitive tolling.

We conclude that Swick's argument from statutory history is undermined by the differences between Section 4210(c) of the parole statutes and the kind of fugitive tolling we consider here. We next consider the common-law history of fugitive tolling.

### B.    Pre-1984 Cases on Fugitive Tolling

Our colleagues in *Cartagena-Lopez* stated that "[b]y the time § 3624(e) was enacted as part of the Sentencing Reform Act of 1984, the principle that defendants should not benefit from their own wrongdoing was widely recognized." 979 F.3d at 362. The support included a 1923 Supreme Court case recognizing a form of tolling in the analogous parole context. *Id.* (discussing *Anderson v. Corall*, 263 U.S. 193, 196–97 (1923)). In that case, the parolee was convicted and sentenced for a state offense five months before his federal parole was set to expire. *Corall*, 263 U.S. at 194–95. His parole was revoked one month after his release from state prison. *Id.* At the time, the relatively new parole statutes did not provide for tolling, and the parolee argued that the parole board lacked jurisdiction to revoke his parole because it had ended while he was in state prison. *Id.* at 195; Act of June 25, 1910, Pub. L. No. 61-269, 36 Stat. 819, 819–21. The Supreme Court disagreed, reasoning that "[m]ere lapse of time without imprisonment or other restraint contemplated by the law does not constitute service of sentence." *Corall*, 263 U.S. at 196. When the parolee was convicted and served time in state prison, he was like an escaped convict, no longer serving his sentence. *Id.* His parole did not resume until his release from state prison, and so it was revoked before it expired. *Id.* at 197.

*Corall* applied the long-standing common-law principle that a sentence is tolled while a defendant is not serving his sentence due to his own misdeeds. This concept has its most consistent and straightforward applications in two contexts, one of which we have just discussed: parole and probation are tolled whenever the parolee or probationer is serving a custodial sentence. *E.g.*, *id.* at 196–97 (parole); *United States ex rel. Demarois v. Farrell*, 87 F.2d 957, 960–62 (8th Cir. 1937) (probation). The second context, from which the principle originated, is escape from prison. *E.g.*, *Corall*, 263 U.S. at 196 (first citing *Dolan's Case*, 101 Mass. 219, 222 (1869);

No. 24-10172

and then citing *In re Moebus*, 62 A. 170, 171 (N.H. 1905)). This common-law principle can be rationally applied to supervised release: a supervisee who absconds from supervision is not serving his term of supervised release in any meaningful sense. Four of our sister circuits have made this connection, as did our colleagues in their withdrawn opinion. *See Barinas*, 865 F.3d at 110; *Island*, 916 F.3d at 253–54; *Buchanan*, 638 F.3d at 458; *Murguia-Oliveros*, 421 F.3d at 954; *see also Cartagena-Lopez*, 979 F.3d at 363.

Still, absconding from supervision is not the same thing as escaping from prison or serving a custodial sentence while on probation or parole. We thus dig a bit further into pre-1984 cases to see if Congress was on notice that courts had applied the kind of fugitive tolling we address here. Our research has revealed an emerging line of cases holding that fugitive tolling applied in the analogous probation context.[5] The probation statutes did not contain explicit tolling provisions before 1984. *See* §§ 3651–3655 (1982). Thus, Congress knew that courts were increasingly applying fugitive tolling in an analogous context, apart from any explicit statutory language authorizing such tolling. It is fair to presume that Congress would not end the practice *sub silentio*.

---

[5] *United States v. Lancer*, 508 F.2d 719, 734 (3d Cir. 1975) (*en banc*); *Nicholas v. United States*, 527 F.2d 1160, 1162 (9th Cir. 1976); *United States v. Workman*, 617 F.2d 48, 51 (4th Cir. 1980) (*dicta*); *United States v. Gerson*, 192 F. Supp. 864, 865 (E.D. Tenn. 1961) (*dicta*), *aff'd*, 302 F.2d 430 (6th Cir. 1962); *United States v. Green*, 429 F. Supp. 1036, 1038 & n.4 (W.D. Tex. 1977); *cf. Caballery v. United States Parole Comm'n*, 673 F.2d 43, 44–47 (2d Cir. 1982) (dealing with the Youth Corrections Act, which did not explicitly provide for tolling); *Henrique v. United States Marshal*, 476 F. Supp. 618, 623–25 (N.D. Cal. 1979) (same). Other courts held the same after 1984. *United States v. Martin*, 786 F.2d 974, 975–76 (10th Cir. 1986); *United States v. Brandt*, Nos. 87 C 5113, 80 CR 90-4, 1987 WL 16235, at *2 (N.D. Ill. Aug. 26, 1987); *cf. McLinn v. United States Parole Comm'n & Bureau of Prisons*, No. 06-CV-1817, 2007 WL 763651, at *1 (D. Colo. Mar. 9, 2007) (dealing with the Youth Corrections Act). This court joined the chorus in 1990. *United States v. Fisher*, 895 F.2d 208, 211–12 (5th Cir. 1990).

Swick counters that supervised release is different from parole and probation in key respects, so that cases interpreting the parole and probation statutes should not apply to the supervised release statutes. Supervised release, Swick notes, is imposed in addition to the initial sentence of incarceration. Swick adds that, in contrast to an escaped prisoner or an incarcerated parolee or probationer, an absconding supervisee is still serving his sentence because he is still subject to the conditions of supervised release. *See Talley*, 83 F.4th at 1301–02. Any violations committed while the supervisee is at large, including the act of absconding itself, can be punished by revocation if a warrant or summons issues before the term of supervised release expires. *See* § 3583(i); *Talley*, 83 F.4th at 1302–03.

Swick overstates the differences between supervised release and parole. Parole and supervised release are more similar than different: both follow terms of imprisonment, both serve rehabilitative ends, and both are subject to revocation when certain conditions are violated. *See Johnson*, 529 U.S. at 710–11 (highlighting similarities). True, a term of parole satisfies part of the original term of imprisonment, whereas supervised release is separate from the start. *Compare* § 4205(a)–(b) (1982), *with* § 3583(a). Even so, supervised release is still part of the supervisee's overall sentence in the same way that parole is part of the parolee's overall sentence. *See* § 3583(a) (authorizing imposition of supervised release as "part of the [defendant's] sentence").

Supervised release and probation are somewhat less similar. Unlike supervised release, probation is the entire sentence. *See* § 3651 (1982); § 3561. The dissimilarities end there. Both supervised release and probation involve close supervision by a probation officer, subject to similar conditions. § 3655 (1982); § 3601; *compare* § 3563(a)–(b), *with* § 3583(d). Violating the conditions of either can lead to modification or revocation. *Compare* § 3651 (1982), *and* § 3565(a), *with* § 3583(e)(2)–(3). The current tolling and delayed

revocation provisions for supervised release and probation are nearly identical. *Compare* §§ 3564(b), 3565(c), *with* §§ 3624(e), 3583(i). In most relevant respects, a supervisee stands in the same shoes as a probationer.

Given these similarities, the common-law tradition of fugitive tolling for probation and parole that was developing by 1984 is informative. Swick is right that unlike an escaped prisoner or an incarcerated parolee or probationer, an absconding supervisee is still in some sense subject to and thus serving his sentence. *See Talley*, 83 F.4th at 1301–02. That is precisely why we have considered whether there was a specific common-law tradition of fugitive tolling in the probation and parole contexts. An absconding parolee or probationer can be said to be in some sense serving his sentence in the same way as an absconding supervisee, and yet courts have had no qualms applying fugitive tolling in the parole and probation contexts. More to the point, even if a supervisee remains subject to the conditions of his supervised release while at large, we agree with the common-sense rejoinder of our colleagues and four of our sister circuits: a supervisee is not truly serving his sentence when he is doing everything in his power to avoid supervision. *Compare id.*, *with Barinas*, 865 F.3d at 110, *Island*, 916 F.3d at 253–54, *Buchanan*, 638 F.3d at 458, *Murguia-Oliveros*, 421 F.3d at 954, *and Cartagena-Lopez*, 979 F.3d at 363.

By 1984, there was a developing common-law tradition of fugitive tolling in the analogous parole and probation contexts, based on the long-standing principle that a defendant should not benefit from his own wrongdoing. Like our colleagues, we presume that Congress would not depart from this common-law tradition silently. *Cartagena-Lopez*, 979 F.3d at 362–63. Because nothing in the supervised release statutes "effect[ed] [a] change with clarity," SCALIA & GARNER, *supra*, at 318, fugitive tolling exists in the supervised release context. We next consider whether the district court clearly erred in finding Swick a fugitive.

## II.    *Swick's Fugitive Status*

Although we review the district court's jurisdiction to revoke supervised release *de novo*, the additional question of whether Swick was actually a fugitive is a finding of fact that we review for clear error. *See Flores v. Pompeo*, 936 F.3d 273, 276 (5th Cir. 2019). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948). In other words, we must determine whether the district court's finding "is plausible in light of the record read as a whole." *United States v. Aguilar-Alonzo*, 944 F.3d 544, 551 (5th Cir. 2019) (quoting *United States v. Dinh*, 920 F.3d 307, 310 (5th Cir. 2019)).

As a preliminary matter, we agree with a sister circuit that it is the Government's burden, as the party invoking the district court's jurisdiction, to establish the facts necessary to support fugitive tolling. *United States v. Thompson*, 924 F.3d 122, 128, 130 (4th Cir. 2019); *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). What that burden entails depends on what being a fugitive means in this context. We have yet to pass on that question.

The parties offer competing definitions of "fugitive." A legal dictionary defines "fugitive" as involving flight, evasion, or escape. *Fugitive*, Black's Law Dictionary (12th ed. 2024). Thus, Swick argues a fugitive in this context must have the "intent to avoid supervision." The Government uses the same definition but concludes that "an intentional failure to report is sufficient." Although evidence that Swick "hid or ran" would "be *sufficient* to support a finding of fugitive status," under the Government's definition, evidence of this kind "is not *necessary* to make such a finding."

No. 24-10172

The parties agree, though, that the failure to report must be intentional. The Fourth Circuit has held that some level of intent is required. *Thompson*, 924 F.3d at 129. We conclude that knowledge of the obligation and intent to evade it are required. A supervisee who intentionally fails to report to probation is intentionally avoiding supervision. The question here is whether the evidence supports a plausible inference that Swick's failure to report to probation was intentional.

To restate what occurred, Swick served concurrent federal and state sentences from 2009–2017 in a state prison. The federal sentence of 33 months ended well before the state sentence of eight years. Upon release, he had a six-month supervision requirement in his state sentence and a two-year obligation under his federal sentence, seemingly requiring that he report shortly after his release to both authorities. Swick did report to and completed his state supervision, but he did not report to or start his federal supervision.

Swick emphasizes the following undisputed facts to support that he did not knowingly fail to report to federal authorities when released in 2017: (1) he demonstrated his willingness to submit to supervision by successfully discharging terms of state supervision and parole in 2018 and 2022, respectively; (2) the state supervision and arrest records show that he never left Wichita Falls and never sought to hide his identity from police; and (3) there is no evidence that the federal probation office ever confronted him with his failure to report before September 2023. Swick submits these facts reveal an unintentional violator who mistakenly thought his term of supervised release expired before his release from state prison eight years later.

The district court found otherwise. It based its finding on a single document and perhaps also on what the court recalled telling Swick at the

No. 24-10172

earlier sentencing.  The document was the 2009 judgment.  It notified Swick of his obligation to report to probation upon release from prison.  At the hearing that revoked supervised release, the district judge stated this:

> Okay.  Well, I will make the following finding. And that is, I take judicial notice of the judgment documents in this case. The judgment documents in this case specifically instructed your client to report within 72 hours of his release to a supervised release officer to begin a term of supervision, to submit himself to supervision.
>
> That he knew that, because I told him that.

It is unclear whether the district judge was stating that he recalled orally informing Swick in 2009.[6]  Perhaps the judge meant only that the 2009 judgment entered by that judge "told" Swick of his obligation to report upon release.  After what we quoted above, the district judge found Swick knew he had to report to probation within 72 hours of his 2017 release.  He did not report as required, and the district judge inferred that his failure to report was knowing and intentional.  Swick was therefore a fugitive, and his supervised release had been tolled since October 2, 2017.

We agree with Swick that the 2009 judgment provides only limited support for the proposition that he knew he needed to report to federal supervision in 2017.  Nevertheless, our standard of review requires us to review the entire record, not just the reasoning of the district court, before determining that the district court clearly erred.  *U.S. Gypsum Co.*, 333 U.S. at 395.  If the entire record, read as a whole, plausibly supports the district court's finding that Swick knew of his obligation to report to federal supervision in 2017, we must affirm.  *See Aguilar-Alonzo*, 944 F.3d at 551.

_____

[6] The record does not contain a transcript of the 2009 sentencing hearing.

The most direct evidence of fugitive intent would be actual, contemporaneous notice of the obligation to report to federal probation given to the prisoner upon his release from incarceration. The Federal Bureau of Prisons is obligated by regulation to implement a release preparation program for those in federal custody. 28 C.F.R. §§ 571.10–.13. Part of that program entails individualized preparation for post-release supervision.[7] Moreover, shortly before release from federal custody, the federal probation office provides federal prisoners with instructions on how to report to probation upon release.[8] If those obligations are fulfilled, supervisees released from federal custody will have actual, contemporaneous notice of the obligation to report to federal probation upon release.

There is no indication that the Bureau of Prisons, prior to Swick's release from state prison nearly six years after completion of his federal sentence, complied or even should have complied with those regulations. A prisoner released from state custody might be given similar detailed notice, but nothing in this record reveals what Swick was told about federal supervision when he was released from state prison. In future cases, the

---

[7] *See* FED. BUREAU OF PRISONS, PROGRAM STATEMENT: RELEASE PREPARATION PROGRAM 18 (2007), https://www.bop.gov/policy/progstat/5325_007_CN-1.pdf.

[8] *See* U.S. CTS., *Chapter 2: Initial Reporting to Probation Office*, https://www.uscourts.gov/about-federal-courts/probation-and-pretrial-services/post-conviction-supervision/overview-probation-and-supervised-release-conditions/chapter-2-initial-reporting-probation-office-probation-and (last visited May 13, 2025). At the initial meeting, the federal probation officer provides the supervisee with a written statement of his supervised release conditions, as required by statute. *See* 18 U.S.C. § 3583(f); U.S. CTS., *Chapter 2: Reporting to Probation Officer*, https://www.uscourts.gov/about-federal-courts/probation-and-pretrial-services/post-conviction-supervision/overview-probation-and-supervised-release-conditions/chapter-2-reporting-probation-officer-probation-and-supervised (last visited May 13, 2025).

Government might consider providing evidence of just what the supposed fugitive was told upon release.

Absent evidence of actual, contemporaneous notice, we look for indirect evidence supporting an inference that Swick knew he needed to report to federal probation in 2017. We begin with what Swick argued at the revocation hearing. Swick informed the court through counsel that he thought his federal supervision expired while he was serving the remainder of his state sentence after completing the federal portion of the concurrent sentences. Notably, this excuse effectively concedes that Swick did not forget about his term of federal supervision, and so the district court would have been justified in disregarding that possibility.

With that possibility dealt with, the district court was left only with Swick's supposed belief that his federal supervision expired while he was in state prison. The Government defends the district court's rejection of Swick's explanation as a "plausible credibility determination." We agree. Given Swick's experience with state supervision, the district court could reasonably reject Swick's explanation by finding Swick savvy enough to know that supervision only occurs when someone is outside of prison. Having rejected Swick's only offered defense, the district court could make the finding that Swick knew of his obligation and failed to report. That does not mean this court would have done so, and we advise the Government to provide stronger evidence in future cases. There was no clear error in the district court's fact-finding.

AFFIRMED.